## COUNTY OF SCHUYLER *v.* THOMAS.

1. The court again decides that the authority conferred by the charter of a railroad company in Missouri upon the county court of any county in which a part of the road of the company might be, to subscribe to the capital stock thereof, was not revoked by sect. 14 of art. 11 of the existing Constitution of that State; and where the General Assembly reserved the right to amend the charter, and the company was consolidated with another, pursuant to a law passed after the adoption of the Constitution, the county court of the county through which the road passed might, without submitting the question to a popular vote, lawfully subscribe to the capital stock of the consolidated company, and issue its bonds in payment therefor.
2. *County of Callaway* v. *Foster* (93 U. S. 567) and *County of Scotland* v. *Thomas* (94 id. 682) cited and approved.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

The facts are stated in the opinion of the court.

*Mr. George W. McCrary* for the plaintiff in error.
*Mr. A. J. Baker* and *Mr. F. T. Hughes*, contra.

MR. JUSTICE HUNT delivered the opinion of the court.

Thomas, the plaintiff below, recovered a judgment for the amount of certain bonds and coupons held by him, which were issued in the year 1871 by the county of Schuyler, in the State of Missouri. He was an honest purchaser of the bonds, without knowledge of vice or defect in their issue.

The following is a copy of one of the bonds : —

" Know all men by these presents, that the county of Schuyler, in the State of Missouri, acknowledges itself indebted to the Missouri, Iowa, and Nebraska Railway Company, a corporation existing under and by virtue of the laws of the States of Missouri and Iowa, formed by consolidation of the Alexandria and Nebraska City Railroad Company (formerly Alexandria and Bloomfield Railroad Company), of the State of Missouri, and the Iowa Southern Railway Company, of the State of Iowa, in the sum of $1,000, which sum the said county hereby promises to pay to the said Missouri, Iowa, and Nebraska Railway Company, or bearer, at the Farmers' Loan and Trust Company, in New York, on the first day of September, A.D. 1891, together with interest thereon from the thirty-first day of December, 1871, at the rate of eight per cent per annum, which interest shall be payable annually in the city of New York, on the thirty-first day of December in each year, as the same shall become due, on the presentation of the coupons hereto annexed. This bond being issued under and pursuant to orders of the county court of said Schuyler County, for subscription to the stock of the Missouri, Iowa, and Nebraska Railway Company, as authorized by an act of the General Assembly of the State of Missouri, entitled ' An Act to incorporate the Alexandria and Bloomfield Railroad Company,' approved Feb. 9, 1857.

" In testimony whereof, the said county of Schuyler has executed this bond by the presiding justice of the county court of said county, under the order of said court, signing his name hereto, and the clerk of said court, under the order thereof, attesting the same and affixing thereto the seal of said court.

"-This done at the town of Lancaster, in the county of Schuyler, in the State of Missouri, this first day of September, A.D. 1871.

" William Casper,

*" Presiding Justice of the County Court of Schuyler County, Missouri.*

" Attest :        D. T. Truitt,

{ seal schuyler county }        *" Clerk of the County Court of*
{ court, missouri. }        *Schuyler County, Missouri.*

" Countersigned and delivered this seventeenth day of May, 1872.

" M. Baker, *Trustee.*"

The legality of the bonds is denied.

1st, It is contended by the county of Schuyler that there was no authority in the company, as incorporated in 1857, to

locate its track through or in the county of Schuyler; that as the authority to subscribe and issue bonds depended on the power to locate, there was no authority to subscribe for stock or issue the bonds of the county.

The act to incorporate the Alexandria and Bloomfield Railroad Company, approved Feb. 9, 1857, contained the following provisions: —

"It shall be lawful for the county court of any county, in which any part of the route of said railroad may be, to subscribe to the stock of said company, . . . and issue the bonds of said county to raise funds to pay the stock thus subscribed."

"SECT. 8. Said company shall have full power to survey, locate, and construct a railroad from the city of Alexandria, in the county of Clark, in the direction of Bloomfield, in the State of Iowa, to such point on the northern boundary line of the State of Missouri as shall be agreed upon by said company, and a company authorized on the part of the State of Iowa, to construct a railroad to intersect the road authorized to be constructed by the provisions of this act, at the most practicable point on said State line, . . . and may select such route as may be deemed most advantageous."

Bloomfield, as we learn by the maps in evidence, lies in a northwesterly direction from Alexandria.

Schuyler County is also in a direction from Alexandria northwesterly as to a portion of it, and more nearly northerly as to another portion of it. As a matter of fact, an inspection of the maps furnishes evidence (and they make a part of the record on which our judgment is to be formed) that there is authority to include a portion of Schuyler County in the description of a course northwesterly from Alexandria and in the direction of Bloomfield. These maps and the geography of the State inform us that this road could be so located as to reach the immediate vicinity of Bloomfield, with but little less variation from a direct course than the line through Luray and Upton, which was first adopted.

But a straight line is not required by the statute, nor a line having the fewest curves or angles, nor is the point of crossing the State line fixed or prescribed. The most practicable and advantageous line is to be adopted, depending upon all

the elements entering into the economy, productiveness, and local advantages which would be sought by prudent men in determining such a question.

This subject was discussed in *County of Callaway* v. *Foster*, 93 U. S. 567. As there intimated, we are of the opinion that the legislature, by the expression, "any county in which any part of the route of said railroad may be," used as it was with reference to a road not yet surveyed or located, intended to give a broad latitude, and to embrace all the counties through or into which it was possible that the said road could be located. These statutes are to be construed as they were intended to be understood when they were passed, twenty years since. The after-wisdom, obtained by unfortunate results, cannot justly be applied in their interpretation. A construction may *now* be sought which will avoid the payment of the debts contracted for building the road. *Then* every inducement was presented to make subscriptions and obtain the money. Little respect would have been paid to the careful legislator or the strict interpreter of the law, who, twenty years ago, had doubted the power of these counties to make the subscription in question.

We see nothing in the law or in the necessary facts of the case, affecting the power in the first instance of the county of Schuyler to subscribe to the stock of the Alexandria and Bloomfield Railroad Company, and to issue its bonds to raise the funds to pay such subscription.

2d, It is further alleged that in the year 1866 the Alexandria and Bloomfield road was permanently located through the towns of Luray and Upton to the north boundary line of Missouri, and that no part of the line thus located was in or through the county of Schuyler, and that the same was continued into the State of Iowa by another company organized in that State; that the name of said Alexandria and Bloomfield road was in that year changed by an act of the legislature to that of Alexandria and Nebraska City Railroad, and that in its second section that act provided "that said railroad company may extend said road from a point at or near Luray to Nebraska City, in Nebraska Territory, on the most practicable and direct route by way of or near Rockport, in Atchison County, Missouri; that the

name was again changed to that of the Missouri, Iowa, and Nebraska Railroad Company ; that the road was thereupon and by virtue of said act constructed through Schuyler County into the State of Iowa, and that this is the only line thus constructed through Schuyler County.   It is then added, that when Schuyler County made its subscription and issued its bonds, as set forth in the complaint, to aid in the construction of this road, it was done without a submission of the same to a popular vote, and that the same was made without the previous assent of a majority of two-thirds of the voters of the said county, and it is contended that such subscription is void.

The question on this branch of the case arises upon art. 2, sect. 14, of the Constitution of the State of Missouri, which took effect in July, 1865, and yet remains of force.   It is in these words : —

"The General Assembly shall not authorize any county, city, or town to become a stockholder in or to loan its credit to any company, association, or corporation, unless two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent thereto."

By the terms of the charter of the Alexandria and Bloomfield Railroad Company, the counties upon the route on which it might be located, and of which Schuyler is one, were authorized in the year 1857 to subscribe to its stock, and issue their bonds in payment therefor.

It has been repeatedly held by the Supreme Court of Missouri, as well as by this court, that the constitutional provision referred to was prospective only in its effect.   The General Assembly was not permitted thereafter to authorize any county or city to make subscriptions and to issue its bonds, except upon the terms prescribed.   But what it had previously authorized remained unaffected.   The authority given to Schuyler County eight years before the Constitution took effect remained of the same force as if the Constitution had never been adopted.   *County of Scotland* v. *Thomas*, 94 U. S. 682, and cases cited.

It is also established by the same authority that the consoli-

dation of one railroad company with another company does not extinguish the power of a county to subscribe, or the privilege of the company to receive subscriptions; and this although the consolidation be made by authority given after the Constitution took effect, and although the subscription be made to the stock of such newly organized company, and the bonds be issued after the same period. These are held to be features constituting alterations merely of the charter, and not affecting the rights or powers of the companies to receive subscriptions or of counties to issue their bonds.

Much weight is given in argument to the allegation that the route of the Alexandria and Bloomfield road, as first established and partly built, did not touch any portion of the county of Schuyler. It is contended that, when the route was selected and the terminal point fixed at Upton, the power of the company was exhausted, and the line was fixed, as certainly as if it had been described in the charter. Without considering that general proposition, we are of opinion that it does not govern the present case.

The legislature, in terms, retained the authority to alter or amend each one of these railroad charters. It did amend the charter of the Alexandria and Bloomfield road and its successors so as to authorize a location extending entirely through Schuyler County. It deemed this addition important to the interest of the public, and its exercise changed what may be termed the ordinary rule, that a location once fixed and a road partly constructed could not be changed. That this was within the reserved power of the legislature, if assented to by the company, and that it was a legitimate exercise of the power of amendment, whereby the original charter, with its powers and privileges, was continued and extended, the cases of Callaway and Scotland County sufficiently establish.

It is said, also, that this subscription was rendered void by the act of 1861, prohibiting such subscription. The case of *State, ex rel. Wilson,* v. *Garoute* is cited from the "Central Law Journal" to sustain this proposition.

We do not think it necessary to discuss the question. It was fully considered in *Smith* v. *County of Clark* (54 Mo. 58),

and the validity of the bonds, so far as this statute affected them, was sustained. In the subsequent case of *State* v. *Garoute*, one judge expressed a contrary opinion. The other judges expressed no approbation of the doctrine, and a deliberate opinion of the court cannot thus be disturbed.

The questions in the *County of Scotland* v. *Thomas* (*supra*) arose upon the same charter of the Alexandria and Bloomfield Railroad Company, the same consolidation forming the Missouri, Iowa, and Nebraska Railway Company, with the same original location through Luray and Upton, the same extension and change thereof through the counties of Scotland and Schuyler, and the issue of the same form of bonds at about the same time to the same company to build the same extension of the road as in the case before us.

The court, in delivering its opinion in that case, says : " The amending act, therefore, which authorized a consolidation with the Iowa Southern Railway Company, and thereby constituted the Missouri, Iowa, and Nebraska Railway Company, was in perfect accord with the general purpose of the original charter of the Alexandria and Bloomfield Railroad Company; and if the other rights and privileges of the latter company passed over to the consolidated company, we do not see why the privilege in question should not do so, nor why the power given to the county to subscribe to the stock should not continue in force."

We are of the opinion that the Scotland County case and the Callaway County case were well decided, and that they dispose of the present case. It is neither necessary nor wise to repeat a review of the authorities there discussed. We are satisfied with the cases as they stand.

The county of Schuyler was authorized to make a subscription by virtue of its original charter, and no submission of the question to a popular vote was necessary. That the company might establish a location, and change it by authority of the legislature. That it might be authorized to build a branch or extension in furtherance of its general object as originally chartered. That this might be and was accomplished by a new organization, to which, as the transferee of the original privileges, the right to receive and of the county to make subscrip-

tions pertained. That these powers were legitimately exercised is plain, upon the authorities cited.

The judgment of the court below was in accordance with these views; and without going through the several questions in detail, we answer them in the affirmative, and direct that the judgment of the Circuit Court be affirmed.

*Judgment affirmed.*

Mr. JUSTICE MILLER, Mr. JUSTICE FIELD, and Mr. JUSTICE HARLAN dissented.