## Richmond.

## COMMONWEALTH V. BAILEY.

January 16, 1919.

1. GAME AND GAME LAWS—*Licenses—Fox Huting—Acts 1916, p. 257.*—One who engages in fox hunting in this State is a "person who hunts" within the meaning of section 32, Acts 1916; ch. 152, p. 263, which prohibits hunting without a license outside the limits of one's own or adjoining property.

2. GAME AND GAME LAWS—*Definition of Hunting.*—Hunting is defined to be the act of pursuing and taking wild animals; to hunt is to pursue for the purpose of killing or catching; as to hunt the lion; to take part in the chase for sport or exercise; as, to *hunt the fox;* to go in pursuit of wild animals for food, or feather.

3. GAME AND GAME LAWS—*Construction of Acts 1916, ch. 152, p. 257.*—The statute imposes a general license tax upon all persons who hunt, and any exception thereto must be strictly construed, and those claiming to come within such exemption must make it clearly appear.

4. STATUTES—*Construction—Ordinary Meaning of Words—Where Language is Clear no Need of Construction.*—It is a fundamental rule of statutory construction that words used in an act are to be given their natural and ordinary meaning, unless it plainly appears that they are used in some other sense. And when the intention of the legislature is expressed in clear and precise terms, there is no need for interpretation, and effect should be given to their manifest meaning.

Error to a judgment of the Circuit Court of Southampton county.

*Reversed.*

The opinion states the case.

*Jno. R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* for the Commonwealth.

*Julius W. Pulley,* for the defendant in error.

WHITTLE, P., delivered the opinion of the court.

The defendant in error, Ernest Bailey, was tried before three justices of the peace of Southampton county upon a warrant charging that he "did unlawfully hunt, without license, for foxes in said county." Upon appeal to the circuit court from the judgment of the justices dismissing the warrant at the cost of the Commonwealth the judgment was affirmed, and the case is here upon writ of error to the judgment of affirmance.

The case arises under an act of the General Assembly approved March 11, 1916, entitled "an act to create a State department of game and inland fisheries, and providing for the issuing of licenses to provide revenue for the support of such department and imposing penalties for its violation." Acts 1916, ch. 152, p. 257.

The agreed facts are these: "The defendant is a resident of Southampton county, Virginia, and, on March ——, 1917, he engaged in fox hunting outside of the limits of his own, or the adjoining, property in Southampton county, Virginia, without first having procured a license to hunt. It is further agreed that he was not the owner, or the landlord, of the land hunted over by him, nor was he a member of the families of the owners and landlords of said land, nor was he a tenant or renter residing on said land. It is further agreed that the sole question before the court is whether or not a license is required in order to engage in fox hunting in this State, and that the defendant does not come within any exemption of the Virginia game laws, unless under the provisions thereof one may engage in fox hunting without first procuring a license to hunt. It is further agreed that said defendant was hunting without the consent of the landlord over whose land he hunted."

101

[1]   It thus appears that the question for our determination is whether one who engages in fox hunting in this State is a "person who hunts" within the meaning of section 32 of the act in question.   So much of that section as is pertinent to this inquiry reads as follows:  "Hunting without license prohibited.   Any person who hunts outside of the limits of his own or the adjoining property—without first obtaining a license permitting him to do so—shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than five nor more than twenty-five dollars   *   *   *."

[2]   In 1 Bouvier's Law Dictionary, p. 967, "Hunting" is defined to be "the act of pursuing and taking wild animals; the chase."   Webster's International defines "Hunt:" To search for or follow after, as game or wild animals; to chase; to pursue for the purpose of catching or killing; to follow with dogs or guns for sport or exercise; as, to hunt a deer.   To follow the chase; to go out in pursuit of game; to course with hounds."   So, in the New Standard Dictionary of the English Language, it is defined: "To pursue for the purpose of killing or catching; as to hunt the lion; to take part in the chase for sport or exercise; as, to *hunt the fox* (Italics added) ; to go in pursuit of wild animals for food, or feather;   *   *   *."   So we find: "Fox hound—one of a breed of dogs trained for fox hunting; "Fox hunter" and "Fox hunt—to chase the fox with hounds."   These authorities are quite sufficient to show that the statute plainly embraces a person who engages in fox hunting.

Moreover, we think the act furnishes internal evidence that section 32 was intended to include fox hunters within the class who are required to take out licenses for the privilege of engaging in that sport.   Section 33 of the act provides that "if the owner of any premises shall post notices thereon, in conspicuous places, stating that hunting there-

on without written permission is prohibited, then any person who hunts on such lands during that current year without first having obtained from the owner or agent thereof permission in writing to do so, shall be guilty of a misdemeanor, and, on conviction, shall be fined not less than five nor more than twenty-five dollars; provided, that if the owner or agent of such lands shall at the trial request the remittance of the penalty, the trial judge shall so order. *Provided that this section shall not apply to coon, opossum, beaver, skunk, fox or deer hunters."* (Italics ours.)

If the legislature had not intended to include fox hunters within the provisions of section 32, it would either have expressly excepted them from its operation or else would not have declared that section 33 should not apply to them. Besides, the exception to the above section is manifestly intended to make available to the class of hunters to which it applies the benefit of the license which they are required to obtain. For it is a matter of common knowledge that if the animals referred to in the exception could not be followed beyond the limits of the premises upon which they are started, in most cases the chase would be bootless and the license without value to the possessor.

[3]   The statute imposes a general license tax upon all persons who hunt, and any exception thereto must be strictly construed, and those claiming to come within such exemption must make it clearly appear. *Commonwealth* v. *Lynchburg Y. M. C. A.,* 115 Va. 745, 80 S. E. 589, 50 L. R. A. (N. S.) 1197.

[4]   It is also a fundamental rule of statutory construction that words used in an act are to be given their natural and ordinary meaning, unless it plainly appears that they are used in some other sense. And when the intention of the legislature is expressed in clear and precise terms there

is no need for interpretation, and effect should be given to their manifest meaning.

For these reasons, the judgment of the circuit court will be reversed and annulled, and the case remanded for further proceedings to be had therein in accordance with the views expressed in this opinion.

*Reversed.*