# Staunton.

## Norfolk and Western Railway Company v. Wilkes' Administrator.

### September 20, 1923.

1. Crossings—*Signals, Gates, Etc., at Crossings—Incorporated Town—Section 3958 of the Code of 1919—Case at Bar.*—Section 3958 of the Code of 1919, relating to crossing signals, has no application to incorporated cities and towns, but, by section 3998, the councils of such cities and towns are authorized to require gates or flagmen to be erected or stationed or maintained at crossings whenever, in their opinion, the public interest requires it. In the instant case, an action for death at a crossing in an incorporated town, none such were required. So that there was neither statute nor ordinance requiring of the defendant either signals, gates, or watchmen, or fixing a speed limit within the town.

2. Crossings—*Signals, Gates, Etc., at Crossings—Common Law Duty.*—Although neither statute nor ordinance required of defendant railroad either signals, gates, or watchmen, or fixed its speed limit at a crossing situated in an incorporated town, there nevertheless rested upon defendant railroad the common law duty to use due care to so operate its trains as not to injure others passing over the tracks at grade crossings.

3. Crossings—*Care to be Exercised by Railroad at Crossings—Question for Jury—Burden of Proving Negligence of Railroad—Case at Bar.*—In the instant case, an action for death at a street or road crossing in an incorporated town, defendant railroad erected and maintained an automatic gong at the crossing, and its trains gave the customary crossing signal at from 300 to 600 yards from the crossing.

   *Held:* That whether or not the observance of these precautions constituted due care on the part of the company was a question for the jury upon the evidence in the case, but the burden of proving negligence on the part of the defendant was on the plaintiff, and the jury had no right, in the absence of evidence, to substitute its judgment for the opinion and judgment of the town council, and the practical experience and judgment of the railroad company.

4. Crossings—*Gates, Gongs, Etc., at Crossings—Small Town.*—In the absence of a statute or ordinance requiring it, it is not negligence *per se* for a railroad company to fail to maintain gates or gongs or to keep

a watchman at grade crossings in small towns, unless the crossing is so unusually dangerous as plainly to require it.

5. Crossings—*Automatic Gong—Traveler's Right to Rely on Gong Sounding.*—Where a railroad has established an automatic gong at a crossing, a traveler has the right to rely on the fact that it was the duty of the railroad to maintain the gong in good order so that it would give warning of approaching trains, and the railroad is liable for injuries due to the failure to perform this duty.

6. Crossings—*Negligence of Railroad—Proof of Precautions or Inadequate Precautions.*—In the instant case, an action for death at a crossing, in order to establish negligence on the part of the defendant it was necessary for the plaintiff to prove either that the precautions adopted by defendant at the crossing were inadequate, under ordinary circumstances, to provide protection for persons crossing the tracks at that point, or that the precautions adopted were not observed.

7. Crossings—*Negligence of Railroad—Evidence Held Insufficient to Show that Railroad Failed to Give Warning by Bell or Whistle or that an Automatic Gong Failed to Ring.*—In the instant case, an action for death in an accident at a crossing, plaintiff insisted that no signal was given by whistle or bell of the approaching train and that the automatic gong at the crossing was silent. There was a verdict and judgment for plaintiff. Numerous witnesses testified that the crossing whistle was given and that the gong was sounded. Three witnesses who had crossed the tracks shortly before deceased approached testified that they did not hear the gong or whistle, but as their vision was unobstructed for about a mile when they crossed the track and they did not see the train, no importance could be attached to the fact that they did not hear the gong or whistle. The testimony that the gong did not ring was equally unsatisfactory, and there was uncontradicted evidence that the gong was in good working order.
*Held:* That the verdict of the jury was plainly contrary to the evidence.

8. Witnesses—*Production of Document—Statement that Witness had Previously Made—Case at Bar.*—In the instant case while a witness was being examined in chief by counsel for the plaintiff, he stated that "they claim I heard the whistle blow and the gong was sounded, but I did not hear either one, I didn't see the train even." To this counsel for defendant objected. Thereupon counsel for plaintiff called on defendant's counsel "to produce any statement they have now," and the court compelled counsel for defendant, over their objection, to produce a statement in their possession which the witness had previously made to an agent of the company as to the blowing of the whistle and sounding of the gong. The statement of the witness had in no way been mentioned or referred to by counsel for the de-

fendant. It had not been produced in court and made use of in the examination of the witness.

*Held:* Error.

9. Witnesses—*Contradiction by Prior Inconsistent Writing—Section 6216 of the Code of 1919.*—The first part of section 6216 of the Code of 1919, as to the contradiction of a witness by a prior inconsistent writing, applies only to the cross-examination of a witness, "as to previous statements made by him in writing or reduced into writing," and not to an examination in chief of one's own witness.

Error to a judgment of the Circuit Court of Roanoke county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Funkhouser & King* and *Staples, Cocke & Hazlegrove,* for the plaintiff in error.

*Broun & Price* and *A. B. Hunt,* for the defendant in error.

Burks, J., delivered the opinion of the court.

This was an action by the administrator of A. B. Wilkes against the Norfolk and Western Railway Company to recover damages for the alleged negligent killing of Wilkes by the railway company at a street crossing in the town of Vinton, Virginia. There was a verdict and judgment for the plaintiff for $3,000.00.

The railroad through Vinton is a double track, and runs practically east and west, with a siding on the north side of the two tracks. A street, or road as it is designated by some of the witnesses, crosses the tracks in the town at practically right angles. The track on the south side is used as the eastbound track and that on the north side as the westbound track. The view

east to a person standing on or near the crossing is unobstructed for about a mile. The town of Vinton has no ordinance as to the speed limit of trains passing through the town, nor as to gates, watchmen, or gongs at railroad crossings, nor as to bells and whistles. The railway company, however, maintains a gong at the crossing which operates automatically, and begins to sound when a train is at a point 2,240 feet from the crossing and continues to sound until the approaching train has passed over the crossing. It also maintains the customary whistle signals for crossings.

On November 12, 1921, about 4:15 p. m., the plaintiff's intestate and three companions, returning from a day's hunting excursion in an automobile driven by one of their number, drove upon the railroad tracks from the south side, and were struck and instantly killed by a passenger train of the defendant. The day was cold and windy, and the curtains of the automobile were buckled down and entirely enclosed it. The train was going west on the westbound tracks, and was running on time at the usual rate of speed of from thirty-five to forty-five miles an hour. It was not scheduled to stop at Vinton. The street and the railroad are on practically the same level, and the occupants of the car lived close by and were familiar with the crossing. At a point nine feet south of the eastbound track, and twenty-three feet south of the westbound tracks, upon which the train was running, the track to the east could be seen for nearly a mile without any obstruction to the view. The automobile was running from ten to fifteen miles an hour before reaching the railroad, and there is no evidence that it slowed down or stopped before going upon the track.

The declaration charges negligence, in failure to warn, by a bell, whistle, or crossing gong; failure to station watchmen, or maintain effective signal service devices at said crossing; failure of stationary gong to ring as

train approaches; failure to keep right of way cleared; and reckless speed.

The defendant, by appropriate pleadings, denied all negligence on its part, and also relied on the contributory negligence of the plaintiff's intestate.

[1-5] Section 3958 of the Code, relating to crossing signals, has no application to incorporated cities and towns, but, by section 3998, the councils of such cities and towns are authorized to require gates or flagmen to be erected or stationed or maintained at crossings whenever, in their opinion, the public interest requires it. In the instant case none such were required. So that there was neither statute nor ordinance requiring of the defendant either signals, gates, or watchmen, or fixing a speed limit within the town. But there nevertheless rested upon the defendant the common law duty to use due care to so operate its trains as not to injure others passing over the tracks at grade crossings. This it attempted to do by the erection and maintenance of an automatic gong at the crossing which would begin to ring when an approaching train was within 2,240 feet from the crossing and would continue to ring until after the train had passed over it, and also by giving the customary crossing signal at from 300 to 600 yards before reaching the crossing. Whether or not the observance of these precautions constituted due care on the part of the company was a question for the jury upon the evidence in the cause, but the burden of proving negligence on the part of the defendant was on the plaintiff, and the jury had no right, in the absence of evidence, to substitute its judgment for the opinion and judgment of the council of Vinton, and the practical experience and judgment of the railroad company. In the absence of a statute or ordinance requiring it, it is not negligence *per se* for a railroad company to fail to

maintain gates or gongs or to keep a watchman at grade crossings in small towns, unless the crossing is so unusually dangerous as plainly to require it. *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; *Cowen* v. *Deitrick,* 101 Md. 46, 60 Atl. 282, 4 Ann. Cas. 292, and note; *Danskin* v. *Penn. R. Co.,* 76 N. J. L. 660, 72 Atl. 32, 22 L. R. A. (N. S.) 232; *In re Pennsylvania Ry. Co.,* 213 Penn. St. 373, 62 Atl. 986, 5 Ann. Cas. 299, 3 L. R. A. (N. S.) 140; *Weber* v. *New York, etc., R. Co.,* 58 N. Y. 451; 22 R. C. L. 1006, secs. 235, 238, and cases cited. But the defendant having established a gong at the crossing, the plaintiff's intestate had the right to rely on the fact that it was the duty of the defendant to maintain it in good order so that it would give warning of approaching trains. In 22 R. C. L. 1006, sec. 255, it is said: "And although a railroad company may be under no duty to construct gates at a crossing, if the company does so it is bound to operate the same in prudent manner, and is liable for injuries due to the failure to perform this duty." See also notes 33 L. R. A. (N. S.) 989, and 3 Ann. Cas. 449 and cases cited.

[6] In order to establish negligence on the part of the defendant it was necessary for the plaintiff to prove either that the precautions adopted by the defendant were inadequate, under ordinary circumstances, to provide protection for persons crossing its tracks at that point, or that the precautions adopted were not observed. *Grand Trunk R. Co.* v. *Ives, supra.* But the plaintiff introduced no evidence to show the inadequacy of the precautions adopted by the defendant, nor was that position taken in the argument.

[7] The plaintiff insisted that no signal was given by whistle or bell of the approaching train and that the gong at the crossing was silent. The deceased ap-

proached the track from the south side. The view of the track east of the crossing, from which direction the train came, was unobstructed for one mile to a person on the crossing, or twenty-three feet south of the westbound track on which the train was approaching. A negro man driving a three-quarter ton delivery truck passed over the crossing about a hundred yards in front of the automobile in which the decedent was riding. This driver and the two boys who were in the truck with him testified on behalf of the plaintiff. All of them testify that they did not hear the gong ring nor the whistle blow when they passed over the track. They also testified that they were on the lookout for trains, that they looked east and that there was no train in sight when they passed over the crossing. As the vision was unobstructed for a mile, if no train was in sight there was no occasion for the whistle to blow or for the gong to sound, and they were doubtless correct in saying that they did not hear either. One of these witnesses himself explains the situation. He was asked: "You do not undertake to say that the engine did not whistle, do you?" To which he replied: "I couldn't say it didn't whistle. Of course, it wasn't time for it to whistle." The driver of the truck and others may have been mistaken as to the estimate of the distance between the track and the automobile, but all three of them could not well be mistaken in saying the train was not in sight when they crossed the track. Under the circumstances, we attach no importance to the fact that these witnesses did not hear either the gong or the whistle. The plaintiff introduced no other witness to prove that the whistle of the engine was not sounded.

In opposition to this the defendant introduced thirteen witnesses who testify that the crossing whistle was given, five of whom gave special reasons why the fact

was impressed upon their minds. One of them had to throw the mail bag off at Vinton, another had to get the bag when it was thrown off and hence was listening for the train; two others had relatives on the train and were on the lookout for them—one of the latter waved to her husband who was a brakeman on that train. Several of them also testify that the bell on the engine was ringing, and the fireman and engineer testified that the bell was operated by mechanism on the engine and that it was not only ringing for some distance before reaching Vinton, but that it had to be cut off after the train stopped.

On the subject of the sounding of the gong at the crossing, the plaintiff attaches great weight to the testimony of Mrs. W. H. Jones, who was a passenger on the train that killed the plaintiff's intestate. She does state positively that the gong did not ring, but her testimony on cross-examination shows that there was considerable confusion at the time, and that no greater weight should be given to her testimony than that she did not hear the gong ring. The collision and its incidents occupied a very brief space of time. At the time of the collision Mrs. Jones was engaged in conversation and she states that at that time she had not thought anything about the gong. When the shock came her companion remarked that they must have struck somebody and she said that she then listened and did not hear any gong. The train was running very rapidly and as soon as the rear coach passed over the crossing as much as twenty feet the gong automatically stopped ringing. It must have been a very brief space of time between the collision and the time when the gong stopped ringing, and she says amongst other things, "I was so excited, if it rang I would not have heard it, nobody wouldn't have heard anything at that time or paid any attention to

it." So that the great probability is that her listening was at a time when the gong had ceased to ring. She admits that after the brakes were applied and the train had stopped there was a great deal of confusion, and that she got off as soon as she could and took a car from Vinton to her home. The plaintiff also relied upon the testimony of a witness who stated that some thirty days or more before the accident the gong was out of order and frequently rang when no train was approaching and failed to ring at other times when trains were approaching. At least four witnesses on behalf of the defendant testified that the gong at the station was ringing when the train approached Vinton. One of these witnesses who heard the gong ringing was in a room back of the station, and one was chopping stove wood in his back lot near the station. Another was standing in the street just opposite the gong and saw the automobile approaching in which the plaintiff's intestate was riding, and witnessed the collision. It was further shown that the section foreman was working on the track in close proximity to the gong the whole of the day of the accident, and that the gong was in good order and rang for all passing trains that day. The supervisor of signals testified that he examined the gong at eleven o'clock in the morning of that day and found it in good working order, and he and several others testified that it was examined again within one hour after the accident and that it was still in good working order. Furthermore, the signal engineer of the defendant testified that "if that test of throwing the switch was made and the bell operates it shows absolutely that the bell operated for the train that immediately preceded that operation." None of this testimony was contradicted or called in question in any way except so far as it may be deemed to conflict with the testimony of Mrs. Jones. It is unbelievable from this testimony that the gong

was not ringing when the plaintiff's intestate drove upon the track. We are of opinion that the plaintiff failed to establish the primary negligence of the defendant, and that the verdict of the jury so finding is plainly contrary to the evidence. This renders it unnecessary to pass upon the contributory negligence of the plaintiff's intestate.

[8, 9] A question of practice arose during the trial which we have been asked to pass upon. While a witness, Kingery, was being examined in chief by counsel for the plaintiff, he stated that "they claim I heard the whistle blow and the gong was sounded, but I did not hear either one, I didn't see the train even," and objection was made by counsel for the defendant to the statement of the witness of "what people claim they said." Thereupon counsel for the plaintiff called on defendant's counsel "to produce any statement they have now," and the court compelled counsel for the defendant, over their objection, to produce a statement in their possession which the witness had previously made to an agent of the company as to the blowing of the whistle and sounding of the gong. While a similar statement had been introduced by the defendant's counsel on the cross-examination of another witness for the plaintiff, the statement of this witness had in no way been mentioned or referred to by counsel for the defendant. It was a private paper in the possession of counsel for the defendant. It had not been produced in court and made use of in the examination of the witness, as in *Mohler* v. *Commonwealth*, 132 Va. 713, 111 S. E. 454, and might never be produced, and the trial court erred in compelling its production. The first part of section 6218 of the Code applies only to the cross-examination of a witness, "as to previous statements made by him in writing or reduced into writing," and not as to an

examination in chief of one's own witness. While it was error in the trial court to compel the production of the statement at the time and under the circumstances under which the demand was made, we do not mean to say that the case would be reversed if that were the only error committed on the trial, but only to determine the proper practice in such cases.

For the error hereinbefore pointed out, the judgment of the trial court will be reversed, the verdict of the jury set aside, and judgment for the defendant will be entered in this court pursuant to section 6365 of the Code.

*Reversed.*