## Bohmer's Administratrix v. Kentucky Traction & Terminal Company.

### (Decided December 18, 1925.)

### Appeal from Fayette Circuit Court.

1. Railroads—Interurban Railroads Required to Give Same Warnings as Steam Trains.—Ky. Stats., section 786, applies to interurban railroads, and such railroads, in operation of their trains, are required to maintain same kind of lookout ahead and give such signals and warnings of approach of trains to public crossings on grade as are steam trains.

2. Railroads—Failure to Instruct on Duty to Give Crossing Signals Held Prejudicial Error.—In action for death, when struck by interurban train at crossing, where evidence was conflicting as to distance train was from crossing at time of giving signals, court should have properly instructed jury with respect to law requiring trains to give signals of their approach, and neglect to do so was prejudicial error.

3. Railroads—Traveler Must Exercise Reasonable Care.—Traveler on public highway does not have duty, on approaching intersection with railroad tracks, to stop, look, and listen, but must exercise care of reasonably prudent man approaching such crossing under similar circumstances.

4. Railroads—Instruction on Last Clear Chance Doctrine Held Inapplicable.—In action for death when struck by interurban car, evidence showing that motorman, by exercise of greater diligence after discovery of deceased on track, could not have avoided col-

lision, held that instructions setting out last clear chance doctrine were properly refused.

WOODWARD, WARFIELD & HOBSON and WILSON & HARBISON for appellant.

ALLEN, BOTTS & DUNCAN and WALLACE MUIR for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This action in the Fayette circuit court was commenced by the administratrix of Bohmer against appellee, Kentucky Traction & Terminal Company, to recover damages for his alleged wrongful death in a collision between an interurban passenger car and the automobile of Bohmer at a highway crossing. The jury returned a verdict for the railroad company, and the administratrix appeals.

The chief complaint of the administratrix is of the instructions given by the court to the jury. The company insists that it was entitled to a directed verdict in its favor; that the instructions given by the court were more favorable to the administratrix than the law authorized, and the instructions, if erroneous, were not prejudicial to appellant.

The accident happened at the crossing over Kearney pike on the main line of the interurban between Lexington and Georgetown, but outside of the city limits. The highway runs almost at right angles to the tracks of the interurban at a point where the accident happened; and the evidence shows that one riding in an automobile on Kearney pike can see the approach of an interurban train for several hundred feet before it reaches the intersection and that the motorman at the wheel of an interurban car approaching the crossing can see the approach of an automobile on Kearney pike several hundred feet before it reaches the intersection. Appellant's intestate, Bohmer, with Peter Powell, was driving along Kearney pike at a moderate rate of speed; some witnesses say ten to fifteen miles, while others say twelve to twenty miles per hour. The interurban approached the intersection at a low rate of speed, estimated by most of the witnesses at not exceeding twenty-five miles per hour. There were several passengers on it and it was in charge of a motorman who also acted as conductor. The front wheels of the automobile crossed one of the rails of the interurban

track just as the interurban car struck the right side of the automobile. The collision demolished the automobile and threw it with its occupants against a telephone pole some twenty or thirty feet away, breaking down the pole. Appellant's decedent, Bohmer, was killed outright or died shortly thereafter, while Powell was so badly injured that at the time of the trial of this case, months after the accident, he was a helpless invalid.

The administratrix insists that the trial court failed to properly define the duties of the motorman in charge of the interurban car at the time of the collision. The court told the jury that it was the duty of the defendant's motorman in operating his car at the time and place of the accident, as it approached the intersection of the Georgetown and Kearney pikes and the crossing thereat, to give seasonable warnings of the approach of the car to the crossing by blowing the whistle or sounding the gong, either continuously or alternatively. Appellant insists the expression "seasonable warning," used by the court, is not equivalent to the language generally employed by courts in instructing juries upon the duty of giving warning signals of the approach of trains to highway crossings, and does not conform to the requirements of section 786, Kentucky Statutes, which says that each railroad company shall equip its trains with bells and whistles and "such bell shall be rung or whistle sounded, outside of incorporated cities and towns, at a distance of at least fifty rods from the place where the road crosses upon the same level any highway or crossing at which a signboard is required to be maintained, and such bell shall be rung or whistle sounded continuously or alternatively until the engine has reached such highway crossing."

We have held that section 786, Kentucky Statutes, applies to interurban railroads and that such railroads, in the operation of their trains, are required to maintain the same kind of lookout ahead and to give such signals and warnings of the approach of its trains to public crossings on grade as are steam trains. Commonwealth v. L. & E. Railroad Company, 141 Ky. 583. In the case of C. & O. Railway Company v. Stone, 200 Ky. 502, we held the statutory signals required by section 786 to be mandatory, and observed, "and may be said to be the minimum duty to be exercised by the engineman outside incorporated cities and towns, and it was proper to submit the same by instructions."

Appellee company tacitly admits that the instructions are erroneous in omitting to enumerate the duties required by section 786, but it insists that though erroneous the instructions were not prejudicial to appellant, basing this contention upon the assumption that all the evidence tends to show that the statutory signals were given in a proper manner, in part reciting the evidence with respect to the signals given by the interurban car as it approached the intersection.

The evidence was in great confusion, some of the witnesses testifying that the signals were given as much as 800 or 900 feet from the intersection, and others that the signals were first given much closer to the intersection. The motorman himself stated the distance from the point where he gave the first signals for the crossing was much less than fifty rods from the intersection. There was also evidence for appellant tending to show that no crossing signals were given by the interurban car as it approached the intersection. The court should, therefore, have instructed the jury with respect to the law, requiring trains, both electric and steam, to give signals of their approach to public grade crossings, and it was prejudicial error to neglect to do so. The jury was left without a guide in determining whether the signals given were seasonable warnings of the approach of said car to said crossing. It was likewise the duty of the trial court to instruct the jury that it was the duty of the motorman in charge of the interurban car to maintain a lookout ahead along the track for the presence of persons upon it at public crossings, or so near the tracks as to be in danger of being struck by the car. Of course, the motorman was not obliged to look out over the fields to see whether motorists were driving in the direction of the intersection, for it was his duty to keep his eyes upon the tracks at the crossing. Neither was it the duty of Bohmer, as he approached the intersection, to stop, look and listen for the approach of a train. We have never adopted that doctrine in this state, but it was his duty to exercise the care of a reasonably prudent man approaching such a crossing under similar circumstances, and if he failed to do so, even though that duty required him to stop or to look or listen, or all, he was guilty of such contributory negligence as will bar a recovery by his administratrix. The duties of the motorman in charge of the interurban train and of Bohmer in charge of his.

automobile as they approached the intersection were correlative, and a neglect of such duty by the motorman rendered his company liable, and neglect on the part of Bohmer to observe the care of a prudent man under like circumstances rendered him guilty of contributory negligence. Upon another trial the court will give the usual instructions upon the duties of a motorman, under section 786, Kentucky Statutes; so, also, will the court say to the jury that it was the duty of the motorman to maintain a lookout ahead of the train at the intersection of Kearney pike, as indicated above.

Appellant also insists that the instruction on contributory negligence should have directed the jury to find for the defendant in case it believed the defendant guilty of contributory negligence, unless it believed from the evidence that after Bohmer was guilty of such acts as amounted to contributory negligence, if any, the motorman perceived Bohmer's danger, or by the use of ordinary care could have perceived the same, and could have avoided striking and killing Bohmer, in the exercise of ordinary care by the use of the means at hand, and failed to do so, in which event the jury should find for the administratrix notwithstanding any contributory negligence on the part of Bohmer. The evidence so far as developed tends to show that the motorman did not see the automobile of Bohmer until it was within a few feet of the interurban track and the interurban car was only fifty or sixty feet from the intersection, both moving towards the intersection. The motorman testified that as soon as he observed the motor car he applied his brakes and sounded an alarm signal and did everything within his power, with all means at hand, to check the interurban car and to avoid the collision. The record as presented does not contain a word of evidence indicating, so far as we are able to see, that the motorman could have by the exercise of greater diligence, after discovering the presence of Bohmer's car, avoid the collision. There was, therefore, no place in the instructions for the last clear chance doctrine asked by appellant. The trial court, therefore, properly rejected the instructions offered by the administratrix, embodying that qualification of the instruction on contributory negligence.

In failing to instruct the jury in accordance with the provisions of section 786, Kentucky Statutes, and upon the duty of the motorman to maintain a lookout ahead of

the interurban, the trial court committed prejudicial error for which the judgment must be and is reversed for new trial in accordance with views herein expressed.

Judgment reversed.