# Wytheville.

FRANKLIN AND PITTSYLVANIA RAILWAY COMPANY V.
KELLEY L. SHOEMAKER, COMMITTEE, ETC.

June 18, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Browning, JJ.

The opinion states the case.

*C. C. Lee,* for the plaintiff in error.

*A. B. Hunt, P. H. Dillard, Jr.,* and *R. L. Carney,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Designating the parties as they were designated in the trial court, the defendant, a Virginia corporation, was chartered on the 13th day of July, 1922, and by its charter was authorized to operate its lines "with steam or any other kind of motive power." The road itself, now nineteen miles long, lies wholly in Franklin county. Its motive power consists of a light freight engine and a gasoline power car. This locomotive, carrying a light freight train, is scheduled to make one trip a week and runs as an extra whenever there is any demand for it. The power car makes two trips a day and is nothing more than a motor bus fitted for railway traffic. It is built on a Kelly Springfield chassis, has a seventy-five-horsepower motor, and is equipped with air and hand brakes. Its body is about eight feet wide and about thirty-five feet long. In the rear is a space for passengers; forward, baggage, mail and express are carried.

On the 19th of December, 1928, W. I. Shoemaker, driving two mules to a wagon, undertook to cross the defendant's track at a public crossing. He was struck by this motor car and suffered distressing and permanent injuries. In this action brought by his committee he recovered a verdict for $18,-000.00, which was confirmed by the trial court. It was of opinion that what are known as the crossing statutes in Virginia, Code sections 3958 and 3959, applied, and so instructed the jury. The correctness of that ruling is challenged by proper exceptions and on it this case in a large measure turns.

Section 3958 provides: "Every railroad company, whose line is operated by steam, shall provide each locomotive engine

passing upon its road with a bell of ordinary size, and steam whistle, and such whistle shall be sharply sounded outside of incorporated cities and towns at least twice at a distance of not less than 300 yards, nor more than 600 yards, from the place where the railroad crosses upon the same level any highway or crossing, and such bell shall be rung or whistle sounded continuously or alternately until the engine has reached such highway crossing, and shall give such ·signals in cities and towns as the legislative authorities thereof may require."

Section 3959 provides that when there is a failure to give these signals of approach at a grade crossing, a traveler there injured shall not be precluded from a recovery by the mere fact that he was guilty of contributory negligence, but that his failure to exercise proper care must be considered by the jury in mitigation of damages.

In the construction of statutes, words should be given their natural and ordinary meaning unless from the statute itself it plainly appears that the legislature intended otherwise. *Harrison* v. *Wissler,* 98 Va. 597, 36 S. E. 982; *Commonwealth* v. *Bailey,* 124 Va. 800, 97 S. E. 774.

A statute which is plain upon its face should be taken at its face value.

"There is always a tendency to construe statutes in the light in which they appear when the construction is given. It is easy to be wise after we see the results of experience * * *, but in endeavoring to ascertain what the Congress of 1862 intended, we must, as far as possible, place ourselves in the light that Congress enjoyed, looking at things as they appeared to it, and discover its purpose from the language used in connection with attending circumstances." *Platt* v. *Union Pacific R. R. Co.,* 99 U. S. 48, 63, 25 L. Ed. 424; *County of Schuyler* v. *Thomas,* 98 U. S. 169, 25 L. Ed. 88.

If the language used is broad enough to include things not yet known, but which may afterwards come into being,

then they, too, are included, but the terms used must be comprehensive enough to include them.

In *McBoyle* v. *United States,* decided by the Supreme Court on March 9, 1931, 283 U. S. 25, 51 S. Ct. 340, 341, 75 L. Ed. 453, Mr. Justice Holmes reached the conclusion that an airplane was not a "vehicle" within the meaning of a statute which prohibited the transportation of stolen goods in a vehicle and said: "When a rule of conduct is laid down in words that evoke in the common mind only the picture of vehicles moving on land, the statute should not be extended to aircraft simply because it may seem to us that a similar policy applies, or upon the speculation that if the legislature had thought of, it, very likely broader words would have been used." See also 25 R. C. L. 778.

When crossing signals were first required by statute, Session Acts 1893-4, p. 827, c. 737, gasoline motor cars were unknown, and it is perfectly plain that they do not come within its letter. If they come at all, it must be through intendment and construction. This court, looking at these statutes from another angle, it is true, said that they should be construed strictly, and that the particular signals required must be given; that other though as good will not suffice. *Gregory* v. *Seaboard Ry. Co.,* 142 Va. 750, 128 S. E. 272. As written, and when written, no one could have been in doubt as to their meeting. A locomotive engine then and now connotes a particular machine. It is not a gasoline driven car, a tractor, an electric motor or a trolley car, and if it were to be conceded that in defining a locomotive there was possibility of confusion, that possibility is removed by the statute itself, which declares the locomotive used is to be used on a railway line operated by steam, and must itself have a steam whistle.

Authorities in point are not very numerous and usually turn upon the language written into the particular statute in judgment. Probably the last reported case on this subject is *Libby* v. *New York, New Haven & Hartford R. Co.,* 174 N.

E. 171, 173, decided by the Supreme Judicial Court of Massachusetts on December 20, 1930. Plaintiff rested his case upon the failure of the railway to give the statutory crossing signals. It was held that they did not have to be given.

In section 138, G. L., c. 160 (Mass.), it is said: "Every railroad corporation shall cause a bell of at least thirty-five pounds in weight and a steam whistle to be placed on each locomotive engine passing upon its railroad * * *." Section 232 is in part as follows: "If a person is injured in his person or property by collision with the engines or cars of a railroad corporation at a crossing such as is described in section one hundred and thirty-eight, and it appears that the corporation neglected to give the signals required by said section, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision * * *."

The court, in its opinion, said: "Railroad motor cars operated by gasoline, such as the one in question, could not be included in G. L., c. 160, sec. 232, without rendering the words steam whistle superfluous. It appears that the motor car in the case at bar was equipped with an air whistle. If the statute is to be literally enforced against such motor cars, it would follow that a steam boiler must be kept in operation on them for no other purpose than to sound the whistle. It is plain that the legislature could not have intended those statutes to include the operation of railroad motor cars. The fact that a statute affects public safety does not warrant an interpretation which will make it comply with changed conditions and different modes of travel when the plain language of the statute makes it inapplicable to new conditions and different modes of travel."

In *Hudson* v. *Southwest Mo. R. Co.*, 173 Mo. App. 611, 159 S. W. 9, 12, it was held that a statute which required a bell or steam whistle on each locomotive engine to be sounded at least eighty rods from a highway crossing, Rev. St. 1909, sec. 3140, did not apply to a trolley car operated by electricity. The court said that " 'locomotive engine' and 'steam whistle' unmistak-

ably point to motor engines generating and driven by steam power," and cites as sustaining that view, *Stranahan* v. *Sea View Ry. Co.*, 84 N. Y. 308. That court was of opinion that a railroad operated by steam "plainly had reference to railways moving cars in the ordinary way by means of locomotive engines." See also *Henson* v. *Williamsville, G. & St. L. Ry. Co.*, 110 Mo. App. 595, 85 S. W. 597. There a car in the nature of a handcar was driven by gasoline.

*Cook* v. *Mo. Pac. Ry. Co.*, 160 Ark. 523, 254 S. W. 680, reheard and reported in 169 Ark. 1211, 277 S. W. 345, 346, was an action brought to recover damages for injuries suffered in a crossing accident. The court, in the course of its opinion, said:

"Appellant's prayer for instruction No. 3 was erroneous, because it was an attempt to have the lookout statute (section 8568, C. and M. Digest) applied to the running of motor cars. Likewise, the appellant's prayer for instruction No. 6 was erroneous, for the reason that it was an attempt to have the statute in regard to the duty of railroads to give signals at crossings (section 8568a, C. and M. Digest) applied to motor cars."

In *Yazoo & M. V. R. Co.* v. *Day*, 120 Miss. 296, 82 So. 148, 149, it appears that the car which did the damage at a crossing accident was a gasoline driven car equipped to carry twenty men and used in the place of an old hand car. It was held that the crossing statutes did not apply. The court said:

"There was no violation of any statutory duty in failing to give a signal for the crossing, or in failing to have a headlight upon the car. Section 4045, Code of 1906 (section 6669, Hemingway's Code), requiring locomotive engines to be provided with a bell of at least thirty pounds weight, or a steam whistle which can be heard distinctly at a distance of 300 yards, and requiring the bell to be rung or the whistle to be blown at a distance of 300 yards from the crossing, does not apply to a car of this character."

*Campbell* v. *Greenville, S. & A. Ry. Co.,* 97 S. C. 383, 81 S. E. 676, 677, was a case in which a trolley car was in collision at a public crossing. The company's charter, granted under general law, provided that it "shall be entitled to all the rights, power and privileges and be subject to all the limitations and liabilities of railroad corporations embraced in the general railroad law, being chapter 50 of the said Code of 1902, as well as any acts now existing or hereafter to be passed, regulating the duties, privileges and liabilities of railroad companies." The court said: "The statute shows by its terms that it was not intended to apply to railroads operated by electricity, but only to those operated by steam."

In *Coyne* v. *C., C., C. & St. L. Ry. Co.,* 208 Ill. App. 425, it was held that where a railroad propels an autospeeder on its track over a dangerous crossing there was no statutory duty resting upon it to give signals of approach, but only a common law duty to exercise due care and to give reasonable warning.

The following cases support or tend to support the proposition that said Code, section 3958, applies in the instant case. Particular reliance is placed upon *Stem* v. *Nashville Interurban Railway,* 142 Tenn. 494, 221 S. W. 192, 195. There an interurban electric car was under consideration. The Tennessee statute (Shannon's Code, sections 1574 and 1575) provides that: "The whistle or bell of the locomotive shall be sounded at the distance of one-fourth of a mile from the crossing, and at short intervals till the train has passed the crossing. Every railroad company that fails to observe these precautions, or cause them to be observed by its agents and servants, shall be responsible for all damage to persons or property occasioned by, or resulting from, any accident or collision that may occur."

The court held that these provisions should apply. It was of opinion that motive power was not the test, and said that to so hold would be to nullify the statute, 'and that the true test was "are they (these statutory provisions) reasonably susceptible of application." It will be seen that while these stat-

utes, if applied, required that this electric car be equipped with a whistle, they did not require that it be equipped with a steam whistle.

The same conclusion was reached by the Supreme Court of Utah in *Shortino* v. *Salt Lake & U. R. Co.,* 52 Utah 476, 174 Pac. 860, 865.

The trial court there was of opinion that the crossing statutes, which required locomotives to be equipped with a bell and whistle, did not apply. The Supreme Court said that there was force in that position, but that by an amendment to the general law it was provided that railroads might be operated "by steam, electric, animal, or other power, or any combination thereof." Comp. Laws Utah 1907, sections 434 and 434x. The statute, as amended, further declared that:

"Railroad corporations heretofore organized and now existing, or hereafter organized and existing, under the laws of this State shall be subject to all the duties imposed, and shall have and possess all the powers and privileges conferred by this chapter, as well as the powers and privileges conferred by the laws under which said corporations were organized, or which are contained in their articles of incorporation, and are not inconsistent with the laws and Constitution of this State."

From this it appears that these duties were by express provisions of the statute imposed upon all roads independent of the nature of their motive power, but even here there was no mandate which required the installation of steam whistles.

*Bohmer's Adm'x* v. *Kentucky Traction & Terminal Co.,* 212 Ky. 524, 279 S. W. 955, held that a crossing statute which provided for a bell and steam whistle did apply to an interurban electric trolley car and that the substitution of a gong and electric whistle was necessary and proper.

The same conclusion was reached by the Supreme Court of Indiana in the case of *Union Traction Co. of Ind.* v. *Haworth,* 187 Ind. 451, 115 N. E. 753, 119 N. E. 869.

It is not easy to say where the mere weight of decided cases rests.

■ This crossing statute as it first appeared in the Acts of 1893-1894, p. 827, c. 737, is plain upon its face, but if we were to concede that the language there used is broad enough to include within its ambit forms of motive power as yet undeveloped, such a conclusion as to its proper present construction is made untenable by the fact that when the revisors came to write the Code of 1919 they, as their notes show, gave it careful consideration, amended it and wrote as a companion provision the comparative negligence statute embodied in section 3959, but left unchanged all of those provisions which indicate that it was intended to apply only to locomotives used on railways whose lines are operated by steam. At that time electric railways were in wide use in this State, as were gasoline engines for motor cars. Language is sometimes construed as broad enough to cover devices not yet in being, but it is never broad enough to include something in common use wholly different from that described.

Can it be said that these revisors were not cognizant of all this and did not know that other forms of motive power were generally used? *McBoyle* v. *United States,* 283 U. S. 25, 51 S. Ct. 340, 75 L. Ed. 453-454, *supra.*

They were too able and painstaking to warrant any such conclusion and as bearing upon the manner in which it should be construed, if construction was necessary, we find that provision is made in Code, section 3960, for the punishment of officers and employees of any railway company who fail to carry out any of the provisions of section 3958. The motorman of this gasoline driven car could not have been fined because he failed to sound a steam whistle.

When we come to consider power cars used on steam railway lines the situation is not so patent.

Because the statute applies to trains that pass over a given road, it does not follow that every medium of transportation

there used comes within its purview. Both the motive power and the character of the tractor ought to be considered.

In recent years, cars used to carry workmen to and from their places of employment, and which were formerly moved by hand power, are now commonly operated by gasoline engines. It cannot, with any degree of plausibility, be contended that they must have these standard signal equipments. The legislature must have intended that a certain standard of efficiency be observed; they must be such as to give adequate warning when the crossing is yet 600 yards distant, and while not perfectly clear we think that such a requirement should not reasonably be imposed on cars like that in judgment. Its horsepower is not greater than that of an ordinary automobile, and for all practical purposes it was operated as an automobile is. It does not fall within the letter of the statute and those reasons which would bring it within its spirit are not compelling. In *C. & O. Ry. Co.* v. *Bullington's Adm'r*, 135 Va. 307, 116 S. E. 237, 239, Kelly, P., said:

"* * * it seems certain that the doctrine of comparative negligence introduced by section 3959 can only be applied in cases of a collision on the crossing between a train or engine and a traveler on the highway."

The fact that this statute is inapplicable does not relieve the railroad from the common-law duty of giving timely and adequate notice when its trains approach a public crossing. The sufficiency of such notice is a jury question.

In *Southern Ry. Co.* v. *Bryant*, 95 Va. 212, 28 S. E. 183, Judge Riely said:

"It is well settled law, independent of any statute, that it is the duty of a railroad company to give reasonable and timely warning of the approach of its train to the crossing of a public highway. 2 Wood on Railroads, 1510; and *Johnson* v. *C. & O. R. Co.*, 91 Va. 177, 21 S. E. 238. The public have the same right to use the highway as the railroad company has to use its track, but the law, conceding, from the necessity of the

case, the preference and right of way to the railway train, requires that it shall duly warn travelers upon the highway of its approach to the crossing, so that they may protect themselves and their property from a collision and consequent injury."

See also *Roberts* v. *Alexandria, etc., R. Co.,* 83 Va. 312, 2 S. E. 518; *Virginia Midland R. Co.* v. *White,* 84 Va. 498, 5 S. E. 573, 10 Am. St. Rep. 874; *Davis* v. *McCall,* 133 Va. 487, 113 S. E. 835; *N. & W. Ry. Co.* v. *Wilkes' Adm'r,* 137 Va. 302, 119 S. E. 122.

Exception is taken to the fact that the court refused to instruct the jury that Shoemaker was guilty of contributory negligence as a matter of law.

It is our purpose to remand this case to be tried upon its merits, and so we shall not now undertake to discuss the evidence.

The court also refused to instruct the jury to the effect that the motor car had the right of way. It did have the right of way. *Southern Ry. Co.* v. *Bryant, supra; Virginian Ry. Co.* v. *Bacon, ante,* p. 337, 157 S. E. 789.

The court refused to give this instruction which is:

"E. The court instructs the jury, that even though you believe from the evidence the defendant did not give the signals for crossings required by law, yet, if you further believe from the evidence that the plaintiff was riding in a wagon, loaded with an iron stove, and that the noise made by the wagon and the iron stove was so great, or loud, that the plaintiff could not have heard the signals for the crossing, if they had been given. and further believe that the accident would have happened under those circumstances, even though the signals were given, then the sole, direct and proximate cause of the injury to the plaintiff was his failure to look before going upon the track, and see the approaching cars, and you should find for the defendant."

R. E. Ferguson was asked if Shoemaker made any statement to him. He answered: "The only thing he said to me

about the accident was that he didn't see or hear anything; that the range was making so much noise; I think they are exactly the words he used."

J. B. Ferguson was asked the same question and answered: "I says to him, I says, Mr. Shoemaker, you ought to have stopped and listened; he says, I didn't think about it, says that the old range or stove, which says I didn't think about it, says that never heard anything, that is what Mr. Shoemaker said."

■ If the wagon was in fact making so much noise that Shoemaker could not have heard these signals had they been given, then the failure to give them could not have been hurtful. There would have been no causal connection between such failure and the accident. *Etheridge* v. *Norfolk Southern Ry. Co.*, 143 Va. 789, 129 S. E. 680, 683; *Virginian Railway Co.* v. *Haley, ante,* p. 350, 157 S. E. 776.

■ This instruction was also refused:

"F. The court instructs the jury that if you believe from the evidence that the motorman did blow his whistle for the crossing, and was blowing same when the plaintiff came in his sight and that the plaintiff turned his head towards the approaching motor car and saw the car approaching, and then began to act as if he were attempting to hurry his mules on across the track, and that the motorman, after the plaintiff saw the approaching car, ceased to continue to blow his whistle until the crossing was reached, but used his hands to apply at once the brakes upon said car, to do what was in his power to prevent injury to the plaintiff, then the failure to give further warning, after being seen by the plaintiff, was not negligence, and was not required by law."

The motorman was not negligent in such circumstances in ceasing to sound the alarm and in applying his brake, and this is true either under the statute or at common law. *Norfolk & Western Ry. Co.* v. *Mace,* 151 Va. 458, 145 S. E. 362.

■ Instruction H was rejected upon the theory that the statute, and not the common-law doctrine of negligence, meas-

ured the defendant's duty. The common-law doctrine did apply, and this instruction should have been given.

Instruction K dealt with matters covered by instruction E, so there was no occasion to instruct the jury further on that subject. It was also proper to tell the jury, as this instruction undertook to do, that the burden was on the plaintiff to show some causal connection between the defendant's negligence, should the jury believe from the evidence that the defendant was negligent, and the accident. This burden the plaintiff must carry. *Virginian Ry. Co.* v. *Haley, supra.* Such an instruction the defendant will be entitled to if this case comes to be retried. K, as tendered, is somewhat involved and since, as we have seen, some of the matter there dealt with had been elsewhere covered, [1] it should not be given in its present form.

The court also should have instructed the jury, as it was asked to do, that no presumptions of negligence followed merely from the accident.

In the main, the difficulty presented by these instructions arises out of the fact that the trial court was of opinion that the crossing statute applied, and was further of opinion that, because of that fact, a presumption of causal relation existed when a failure to give the necessary signals appeared and when there was an accident accompanying this failure. This presumption of causal relation was disapproved by us in the recent case of *Virginian Ry. Co.* v. *Haley, supra.*

Bessie Mackenheimer was a passenger on this motor car and testified that she did not hear the crossing signals. It was proper for the defendant, in an endeavor to break the force of her testimony, to show that she had before then said that the motorman did everything possible to avoid the accident.

Defendant offered in the evidence a surveyor's map purporting to show the situation at the place of the accident. A map which is a map and nothing more, is of course competent. This undertakes to show matters which were in dis-

pute—where the motorman was when he first applied his brakes, where he was when Shoemaker first went upon the track, etc., all of which was beyond the proper functions of a map and incompetent. It should have been rejected. A number of other assignments of error deal with immaterial matters, or with those not likely to arise at another trial, and so will not be considered.

What has been said with reference to these statutes and to their application must be read in connection with the particular facts in this case and would not necessarily be authority when we come to consider other facts materially different from those here.

For reasons stated, we have not undertaken to discuss the evidence. This case is remanded for a new trial and such judgment as may be hereafter entered must rest upon such evidence as may be hereafter presented.

*Reversed and remanded.*