# Staunton

## NORFOLK AND WESTERN RAILWAY COMPANY V. JOHN THOMAS WHITE.

September 17, 1931.

Present, Campbell, Holt, Epes, Gregory and Browning, JJ.

AS AMENDED ON REHEARING.

Richmond, March 24, 1932.

Present, Campbell, C. J., and Holt, Epes, Gregory and Browning, JJ.

The opinion states the case.

*F. M. Rivinus, W. Moncure Gravatt* and *R. M. Hughes, Jr.,* for the plaintiff in error.

*B. A. Banks* and *Kelsey & Jett,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

GREGORY, J., wrote the amendments to the opinion on rehearing.

This is an action at law by notice of motion instituted in the Court of Law and Chancery of the city of Norfolk, on June 1, 1929, to recover from the defendant company damages in the sum of $15,000.00 for personal injuries received by White, the plaintiff, on the night of March 17, 1929, at or on the crossing of the railroad tracks of the defendant over Barre street in Norfolk, Virginia, as the result of a collision between a certain engine and cars owned and operated by the defendant with a passenger bus operated by the plaintiff over said crossing. The defendant's train was bound in an easterly direction and the plaintiff's bus in a southerly direction.

The defendant's line of railway may be said to very nearly belt or circle the city of Norfolk.

The plaintiff in error was the defendant in the trial court and the defendant in error was the plaintiff in said court and in such relation they will continue to be referred to.

To the notice of motion the defendant demurred and filed its motion to strike out certain portions of the motion.

The demurrer and motion to strike were overruled after certain language that was objected to was stricken therefrom. The defendant denied all negligence and relied upon the contributory negligence of the plaintiff.

The jury found for the plaintiff and assessed his damages at $6,500.00. The defendant's motion to set aside the verdict for reasons therein stated was overruled.

The facts were these: The defendant's tracks, five in number, crossed Barre street in the said city furnishing the means for operating its trains to and from Lambert's Point, its terminal in said city. The plaintiff was the driver of a bus owned by the Virginia Electric and Power Company, which ran from Pollard street through Barre street to the down-town section of the city. On the night of March 17, 1929, about eight o'clock, the plaintiff drove said bus across the tracks of the defendant to Pollard street and there turned, taking on two passengers, and as he approached the said tracks he paused near the rear of a disabled bus, which was parked on the right hand side of Barre street, before going upon said tracks and looked to the right and the left without seeing the defendant's train or hearing it. His testimony was that a dark object bore upon him without ringing its bell or sounding its whistle and without lights just when he was passing over the fourth of the parallel tracks over said crossing. The plaintiff was quite seriously injured. His head was cut, requiring sixteen stitches to be taken, a number of his teeth were knocked out, his lower lip was cut and his right leg was lacerated. He was a patient in a hospital for over four weeks and was under the treatment of physicians for the open leg wound for over sixty days. One of his physicians testified that his injuries were not of a permanent nature.

The defendant urged six assignments of error to the judgment of the court, which are as follows:

"1. The court erred in refusing to set aside the verdict

and enter judgment for the defendant, and in applying the mitigation rule provided under section 3959 of the Virginia Code rather than treating such rule as inapplicable to the locomotive bell ordinance of Norfolk city and denying recovery.

"2. The court erred in refusing to grant instruction Y as asked by defendant, for like reasons.

"3. The court erred in refusing to set aside the verdict and grant defendant a new trial on the ground that the verdict was excessive.

"4. The court erred in refusing to set aside the verdict and grant defendant a new trial by reason of the failure of the jury to mitigate the damages on account of plaintiff's negligence.

"5. The court erred in refusing to grant instruction E as asked by the defendant explaining to the jury the meaning of mitigating damages.

"6. The court erred in refusing to receive the affidavits of six of the seven trial jurors offered by defendant to show that the jury had not mitigated the damages on account of plaintiff's negligence, and had not understood the instruction with reference to mitigation of damages."

The first assignment of error calls in question the judgment of the trial court in holding that sections 3958 and 3959 of the Code were applicable in the determination of the case at bar. These statutes, for the sake of ready understanding, we quote in full:

Section 3958 is as follows:

"*Bell and whistle; liability for failure to use.*—Every railroad company, whose line is operated by steam, shall provide each locomotive engine passing upon its road with a bell of ordinary size, and steam whistle, and such whistle shall be sharply sounded outside of incorporated cities and towns at least twice at a distance of not less than 300 yards from the place where the railroad crosses upon the

same level any highway or crossing, and such bell shall be rung or whistle sounded continuously or alternately until the engine has reached such highway crossing, and shall give such signals in cities and towns as the legislative authorities thereof may require."

Section 3959 is as follows:

"*Effect of failure to give statutory signals.*—If the employees in charge of any railroad engine or train fail to give the signals required by law on approaching a grade crossing of a public highway, the fact that a traveler on such highway failed to exercise due care in approaching such crossing shall not bar recovery for an injury to or death of such traveler, nor for an injury to or the destruction of property in his charge, where such injury, death or destruction results from a collision on such crossing between such engine or train and such traveler or the property in his charge, respectively, but the failure of the traveler to exercise such care, may be considered in mitigation of damages."

It will be noted that they are found in the Code as portions of chapter 155 entitled "railroads and railroad companies" and most of its sections are declarations of positive duties required by them. Section 3958 constitutes a single sentence and it is seen that it provides for the duty of railroad companies to equip their locomotive engines with a bell and steam whistle, the use of which is different outside of cities and towns which are incorporated and inside of such municipalities and the concluding portion of the statute is in these words: "* * * and shall give such signals in cities and towns as the legislative authorities thereof may require."

Pursuant to this statutory authority the city of Norfolk passed an ordinance known as section 494 of the Norfolk city Code and its sub-section 4 is as follows: "The person or persons having charge of railway engines operating

within the limits of the city shall, when approaching a street crossing, ring or cause to be rung a bell, and all such engines shall be provided with spark arresters."

Thus we find that in the city of Norfolk its legislative authority has specified such signal as is incumbent upon the railroads operating within its limits to give. The title of section 3959 is in these words: "Effect of failure to give statutory signals," and in the body of the statute we find these words referring to the failure of the employees in charge of any railroad, engine or train to comply with the provisions of the statute immediately preceding which is section 3958: "* * * signals required by law * * *." The effect of section 3959 is to absolve the traveler from the legal effect of contributory negligence where the signals referred to are not given and allow him, in spite of such negligence, to recover, but such recovery to be reduced to the extent of his own negligence, in other words, a mitigation of damages. Again, section 3959 uses this language: "* * * the signals required by law on approaching a grade crossing of a public highway * * *."

██ The above excerpts from the statute and its caption or title constitute the source of an ingenious and forceful argument upon the part of the defendant's counsel in accentuating the position of the defendant that the statutes referred to are inapplicable to the case in judgment.

It is quite elementary to say that in construing a statute the primary quest is to find the intention of the enacting body, which is, in this instance, the legislature. We think it is perfectly manifest that what the legislature meant to do was to provide for the safety of those using the highways of the State and thus to require reasonable things of railroads, the compliance with which would likewise inure to their benefit.

█ If this is so, can we brush aside and by our judgment render nugatory this most salutary purpose and intent

because forsooth the statutes contain words which might be said to be inartificial and susceptible of such technical construction, which if adopted would defeat the legislative intent? The defendant, in stating its interpretation of the legal significance of the words "signals required by law," as found in section 3959, is confident that ordinances of municipalities do not come within the meaning of the words, and cases are cited which it thinks sustains its position. The gist of the argument is that an ordinance is not a law. This court in the case of *City of Richmond* v. *Supervisor of Henrico County*, 83 Va. page 204, at page 210, 2 S. E. 26, 29, has said: "The ordinances of the city or resolution or enactment under which it is purchased 'establishes' the hospital; for 'a city council is a miniature General Assembly and their authorized ordinances have the force of laws passed by the legislature of the State.' *Taylor* v. *Carondelet*, 22 Mo. 105; *Wragg* v. *Penn*, 94 Ill. 19 [34 Am. Rep. 199]."

We are unable to find that the above holding has been overruled or disturbed by any subsequent decision of this court. The Supreme Court of the United States appears to have taken the same view as to the legal effect of an ordinance. In the case of *North American Cold Storage Co.* v. *City of Chicago*, 211 U. S. 306, at page 313, 29 S. Ct. 101, 103, 53 L. Ed. 195, 15 Ann. Cas. 276, Mr. Justice Peckham said, at page 313: "In this case the ordinance in question is to be regarded as in effect a statute of the State, adopted under a power granted it by the State legislature, and hence it is an act of the State within the fourteenth amendment." Again the same court in the case of the *Atlantic Coast Line Ry. Co.* v. *Goldsboro*, 232 U. S. 548, at page 555, 34 S. Ct. 364, 366, 58 L. Ed. 721, in reviewing a judgment of the Supreme Court of North Carolina which gave effect to a municipal ordinance regulating the operation of railroad trains in Goldsboro, says:

"A municipal by-law or ordinance, enacted by virtue of

power for that purpose delegated by the legislature of the State, is a State law within the meaning of the Federal Constitution. *New Orleans Water-works* v. *Louisiana Sugar Co.*, 125 U. S. 18, 31, 8 S. Ct. 741, 31 L. Ed. 607, 612; *Hamilton Gas Light Co.* v. *Hamilton City*, 146 U. S. 258, 266, 13 S. Ct. 90, 36 L. Ed. 963, 967; *St. Paul Gas Light Co.* v. *St. Paul*, 181 U. S. 142, 148, 21 S. Ct. 575, 45 L. Ed. 788, 791; *Northern Pacific Railway Co.* v. [Minnesota ex rel.] *Duluth*, 208 U. S. 583, 590, 28 S. Ct. 341, 52 L. Ed. 630, 633; *Grand Trunk Railway* v. *Indiana R. R. Comm.*, 221 U. S. 400, 403, 31 S. Ct. 537, 55 L. Ed. 786, 787; *Ross* v. *Oregon*, 227 U. S. 150, 162, 33 S. Ct. 220, 57 L. Ed. 458, 463.

"And any enactment, from whatever source originating, to which a State gives the force of law, is a statute of the State, within the meaning of the pertinent clause of section 709, Rev. Stat.; Judicial Code, section 237 [28 U. S. C. A. section 344]; which confers jurisdiction on this court. *Williams* v. *Bruffy*, 96 U. S. 176, 183, 24 L. Ed. 716, 717."

Likewise the same court, which of course is the highest authority, in the case of *King Mfg. Co.* v. *City Council of Augusta*, 277 U. S. 100, 48 S. Ct. 489, 72 L. Ed. 801, held a city ordinance fixing water power rates applicable to a canal owned by the city is a statute of the State in that sense.

We think that the above citations constitute satisfactory and eminent authority for the position which we now take, that ordinances or municipal legislative enactments come within the meaning of the words of the statute, "required by law."

But it is again urged that the title or caption of section 3959 which is: "Effect of failure to give statutory signals" should be construed to exclude an ordinance as embraced within its meaning. We think that is not sound for the reasons above stated and in addition the provision of sub-section 20 of section 5 of the Code, which is in part

as follows: "The headlines of the several sections of this Code printed in black-faced type are intended as mere catch-words to indicate the contents of the section and shall not be deemed or taken to be titles of such sections, nor as any part of the statute, * * *." The words referred to are headlines in black-face type. Thus we are of opinion that these words have no such effect as the defendant would give to them.

Further, the defendant asks this court to give to the term "public highway" as used in section 3959 an application restricted to country highways or public roads traversing rural sections. We are of the opinion and so hold that Barre street where it crosses the defendant's railroad tracks in the city of Norfolk, the place where the collision occurred between the defendant's locomotive and the bus which was being driven by the plaintiff, is a highway within the meaning of sections 3958 and 3959 of the Code.

To sustain its contention the defendant cites the recent case of the *So. Ry. Co. v. Davis*, 152 Va. 548, 147 S. E. 228, in which Chief Justice Prentis said that the two sections referred to had no application to the case. This was manifestly because the little village of Clifton, where the accident occurred, had no such ordinance as that we have been dealing with. It also cites the case of *Meredith v. Whillock*, 173 Mo. App. 542, 158 S. W. 1061, 1065, in which the cases of *Baldwin v. City of Philadelphia*, 99 Penn. 170, and *Mayor, etc., of Rutherford v. Swink*, 96 Tenn. 564, 35 S. W. 554, 555 are cited, but in the latter case the court in speaking of the ordinance of the city said: "It is not prescribed by the supreme power of the State, from which alone a law can emanate, and it is not of general authority throughout the Commonwealth." As far as this case is concerned the distinction is that the ordinance of the city of Norfolk was passed with the direct authority of the statute so to do, hence it does emanate from the supreme

power of the State; but above and beyond all it is our opinion that the intent of the legislature was to make the statutes referred to applicable to a case like this. The two statutes are closely interrelated and must be read and construed together and effect given to all of their provisions. It follows that in our judgment there was no error in the ruling of the trial court as to the applicability of the statutes.

The second assignment of error involves the action of the court in refusing to give instruction "Y" asked for by the defendant. That instruction peremptorily told the jury that the plaintiff was guilty of contributory negligence which barred his recovery. Of course the court should not have given this instruction and in view of what we have already said the court correctly refused the instruction.

As to the third assignment of error which involves the amount of the verdict, we are of the opinion that it should not be disturbed. Defendant's counsel has emphasized its statement that the plaintiff was not permanently injured. We are not in agreement with this position because when one of mature years loses a number of teeth it is a permanent injury and no trivial one. Certainly the amount of the verdict cannot be said to be so excessive as to point to prejudice, partiality or corruption on the part of the jury or that they have been misled by some mistaken view of the merits of the case. We, therefore, hold that there was no error in the action of the trial court in its ruling on this question.

We come now to the fourth assignment of error in which it is said that the jury failed to mitigate the damages on account of the plaintiff's contributory negligence. In discussing this assignment we necessarily have to consider the remaining assignments of error, namely, the action of the court in refusing to grant instruction "E" offered by the defendant and its refusal to receive affidavits

of six of the jury to the effect that they did not mitigate the damages and did not understand what mitigation of damages meant. In the first place, leaving out of view the affidavits themselves, can this court say or could anyone say that the jury did not mitigate the damages in accordance with the provisions of the statute and the direction of the court? Our answer to our own question is that the plaintiff claimed damages in the sum of $15,000.00. The jury might have given him more than it did. Its verdict was for less than half of the amount claimed. The presumption is that a jury heeds, rather than ignores, the instructions of a court. Is there anything in this case which would warrant us in holding that it had ignored the instruction? We are unable to find it. The cases which have been decided by this and other courts upon the precise question at issue afford little light for guidance because no two cases are just alike in their details. The facts are nearly always variant. The general rule, of course, is that it is peculiarly a question for the jury, and it has determined the matter in this case. What we have just said is pertinent in a consideration of the action of the court in refusing to grant instruction "E" at the instance of the defendant. As to this, the court in its instruction No. 1 told the jury that they must consider the plaintiff's negligence in mitigation of damages. In instruction No. 2 the court told the jury that any damage allowed by them was subject to such mitigation of damages as may be required by his contributory negligence. While the court might have given an instruction defining mitigation of damages we cannot say that its failure to do so was error.

 ██ In our judgment the court correctly refused to receive and read the affidavits of the jurymen to impeach their verdict. As we understand it, this is permitted by the courts only in cases involving some misconduct upon the part of a juryman or jurymen. In the case of *Culpepper*

v. *Robie*, 155 Va. 64, 154 S. E. 687, 697, Mr. Justice Hudgins, for the court, said:

"It has long been settled in Virginia that the affidavits or the testimony of jurors to impeach their own verdicts are to be received with great caution and only in exceptional cases and in order to prevent a failure of justice. *Litz* v. *Harman*, 151 Va. 363, 144 S. E. 477; *Bryan* v. *Commonwealth*, 131 Va. 709, 109 S. E. 477; *Washington Luna Park* v. *Goodrich*, 110 Va. 692, 66 S. E. 977; *Manor* v. *Hindman*, 123 Va. 767, 97 S. E. 332; *Bull's Case*, 14 Gratt. (55 Va.) 613. The reason for the rule is that otherwise there would be held out to unsuccessful litigants and their friends the strongest temptation to tamper with jurors after their decision and might be productive of great evil. The record discloses nothing which takes the case out of the established rule, but indeed emphasizes the necessity for adherence thereto."

In the reply brief the defendant leans heavily upon the case of *C. & O. Ry. Co.* v. *Barlow*, 155 Va. 863, 156 S. E. 397, but we have to say that there was no question in that case as to the contributory negligence of the plaintiff, but the court held that he was guilty of primary negligence which was the sole proximate cause of the accident. The plaintiff testified that he saw the lights of the oncoming train of the defendant and in spite of this he went in front of it and was injured.

We find no error in the ruling of the court upon the above assignments of error.

As to the question of the application of the case of *Horsman* v. *Richmond, F. & P. Ry. Co.*, 155 Va. 934, 157 S. E. 158, decided January 15, 1931, by this court, we have no difficulty in holding that it is not applicable. There is absolutely no evidence in the case at bar to show that there was ever an award in favor of the plaintiff by the Industrial Commission or that the case was ever before the said

Commission. There is the bare statement of the plaintiff in answer to the question of whether he had received any compensation from the Virginia Electric and Power Company on account of the accident, that he had. But aside from these considerations this point was not raised until the defendant filed its reply brief. Assignments of error are not permitted to be made for the first time in a reply brief.

From the foregoing it follows that we affirm the judgment of the trial court.

*Affirmed.*

HOLT and EPES, JJ., dissenting.