# Wytheville

## ROBERT JERRELL v. NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY.

June 14, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*R. W. Moffat, A. A. Bangel* and *James G. Martin,* for the plaintiff in error.

*Willcox, Cooke & Willcox,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Jerrell, the plaintiff below, instituted an action at law against the railroad company, to recover for personal injuries sustained by him as a result of a collision between an automobile in which he was riding as a guest and a train of the defendant company at a railroad street crossing in the city of Portsmouth. At the conclusion of the testimony of the plaintiff and before any testimony had been offered for the defendant, the trial court struck out all of the plaintiff's evidence upon the motion of the defendant, and a verdict in favor of the defendant resulted, upon which judgment was pronounced.

The sole question to be determined is the propriety of the action of the court in striking out the evidence of the plaintiff and in entering the judgment in favor of the railway company.

The rule in Virginia controlling the motion to strike a plaintiff's evidence prior to the introduction of any evidence on the part of the defendant is clearly stated in *Jones* v. *Hanbury,* 158 Va. 842, 164 S. E. 545, 546, where Mr. Justice Epes, speaking for the court, said:

"Where material facts and circumstances of a case lie peculiarly within the knowledge of the defendant, or peculiarly within the knowledge of both the plaintiff and the defendant, it is a *very* drastic proceeding to strike out all the plaintiff's evidence on a motion made at the conclusion of the plaintiff's evidence in chief, before the defendant has testified. A motion to strike out made under such circumstances should not be sustained unless it is *very* plain that the court would be compelled to set aside a verdict for the plaintiff upon a consideration of the evidence strictly as upon a demurrer to the evidence, and in the light of the fact that the defendant has seen fit not to testify and subject himself to cross-examination. Where a motion to strike out is made after all the evidence for both parties has been introduced or upon a motion to set aside a verdict, a somewhat more liberal rule

is sometimes applied for the consideration of the evidence in passing upon the motion; but in cases such as this (where the motion to strike out is made at the conclusion of the plaintiff's evidence in chief), the court will rigidly apply the rule applicable to the consideration of evidence upon a demurrer to the evidence."

In the case at bar, if the court would have been justified in sustaining a demurrer to the evidence had one been interposed, then its action in striking the plaintiff's evidence was warranted.

The evidence must be considered under the rule stated. There were three witnesses who testified: Satterfield, the driver of the car in which the plaintiff was riding; Atkinson, a pedestrian, who was approaching the crossing from the opposite side, and the plaintiff. A blueprint of the crossing and three photographs were introduced. The crossing is located in the city of Portsmouth and the roadway is known as Western Branch road. There were two tracks of the railroad, which crossed the roadway diagonally. The collision occurred on the first track reached as the car was driven across. The damage to the car from the impact was about the middle of the right side. The view to the right, the direction from which the train was approaching, was partially obstructed by an iron fence, brick posts, a concrete mixer and a pile of laths. There were points between the obstructions where one could have a plain view of the track. Between the last obstruction and the track, a distance of fourteen feet, there was no obstruction. The train was running slow. The car was being driven from nine to fifteen miles per hour. The time was fixed at near eight o'clock on March 16, 1932, and in response to the question "Was it dark?" Satterfield answered, "Yes sir, getting dark." A locomotive with several cars attached to its front was backing across the crossing slowly. There was no light upon the locomotive. The automobile lights were burning.

The car was driven upon the crossing and as it was in the middle of the first track it was struck by the rear end

or tender of the locomotive. It was practically demolished. The plaintiff was painfully and permanently injured.

The witnesses testified that no whistle was sounded or bell rung to warn travelers of the approach of the train. There was no watchman upon the crossing nor were there any gates or other warning devices. The testimony does not directly disclose that there was any trainman on the tender of the locomotive to watch for travelers and warn the engineer of their approach. The testimony is not in dispute, for the defendant introduced none.

An ordinance of the city of Portsmouth was introduced and it provides in part that "while any locomotive shall be passing along or across any street, the bell of such locomotive shall be kept constantly ringing; * * * and when any train of cars is moving backwards, * * * said railroad company shall be required to keep a person on the leading car of such train, to give proper warning to persons in the act of crossing the track in front of said train of cars." * * *

The ordinance also provides for a penalty for its violation.

■ In *N. & W. Ry. Co.* v. *White,* 158 Va. 243, 163 S. E. 530, it was held that the contributory negligence of a plaintiff in going upon a railroad crossing and sustaining an injury would not bar his recovery, but would operate only to mitigate his damages, where the operators of the train failed to give the signals required by statute or by a city ordinance.

The ordinance above referred to, according to the undisputed evidence, was violated by the railway company upon the occasion in question, but the railway company contends, that, as a matter of law, there was no causal connection between such violation and the injury to the plaintiff; and that the sole proximate cause of his injury was his own negligence, or the negligence of the driver, or the joint negligence of both of them.

■■ Whether there was or was not causal connection

between the failure to give the signals required by the ordinance and the plaintiff's injuries should have been submitted to the jury. When and where the driver of the car should have seen the unlighted backing train; what he should have done in the exercise of ordinary care to save himself and the plaintiff (even if the driver's negligence could have been imputed to the plaintiff, which is not conceded); and whether the driver should have stopped or crossed rapidly, were questions for the jury. Likewise whether the sole proximate cause of the plaintiff's injury was the result of his own or the driver's negligence, or whether the driver and the plaintiff, either or both, were guilty of such contributory negligence as would operate to mitigate the plaintiff's damages were jury questions. Certainly, when tested by the rigid demurrer to the evidence rule, the testimony here was sufficient to justify the court in submitting the question to a jury for its determination. Under the circumstances we think the court erroneously struck the evidence and thereby withheld the issues from the jury, and therefore the judgment will be reversed, and the case remanded for a new trial.

*Reversed and remanded.*