# Richmond

## Norfolk Southern Railway Co. v. Louise Lassiter, Administratrix of the Estate of Robert Lassiter, Deceased, Etc., Et Al.

January 21, 1952.

Record No. 3929.

Present, All the Justices.

The opinion states the case.

*James G. Martin & Sons,* for the plaintiff in error.

*Rixey & Rixey,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

The appellee suggests that this appeal should be dismissed for failure of appellant's opening brief to give a fair statement of the facts pursuant to Rule 5:12, § 1 (c), which requires "A clear and concise statement of the facts, with references to the pages of the printed record when there is any possibility that the other side may question the statement." In *Hall* v. *Hall,* 181 Va. 67, 70, 23 S. E. (2d) 810, 811, a warning was given that failure to comply with this rule might result in denial or dismissal of the appeal or writ of error. While appellant's brief is not remarkable for compliance with the rule, its transgression is not serious enough to warrant a dismissal.

Robert Lassiter died as a result of injuries received when a tractor-trailer driven by him was struck by one of defendant's trains on a grade crossing in Norfolk county. The accident happened about 4:25 p. m., April 5, 1949. The train, which consisted of a Diesel locomotive and three cars, was running north. Lassiter was driving west on the public highway which crossed

the railroad approximately at right angles. The locomotive struck the tractor or truck as its front wheels were about the middle of the rails, knocking the motor out of the truck and about 100 feet from the point of impact. Lassiter's administratrix recovered a verdict and judgment against the defendant railway company for $10,000 for causing his death.

The evidence was conflicting as to whether crossing signals were given as the train approached the crossing. However, there was positive evidence for the plaintiff that no whistle was blown or bell rung, and the verdict concluded that question against the defendant.

The court instructed the jury that Lassiter was himself guilty of negligence, but that if the defendant failed to give the signals required by section 3958, Code, 1942 (Michie), (§ 56-414 of the 1950 Code), and such failure proximately caused or contributed to the accident, then section 3959 (§ 56-416 of the 1950 Code) applied, and Lassiter's negligence would not bar recovery but should be considered in mitigation of damages. The assignments of error challenge this ruling and also assert that Lassiter's negligence was the sole proximate cause of the accident.

The defendant contends that since the locomotive pulling this train was a Diesel locomotive, not having a steam whistle, the statutes in question did not apply, hence the statutory rule of comparative negligence could not be invoked, and Lassiter's negligence was a complete bar to recovery.

Section 56-414 provides: "Every railroad company, whose line is operated by steam, shall provide each locomotive engine passing upon its road with a bell of ordinary size and steam whistle," and that outside of incorporated cities and towns, the whistle shall be sharply sounded at least twice at not less than 300 yards nor more than 600 yards from the crossing, and that the bell shall be rung or the whistle sounded continuously or alternately until the engine has reached the crossing.

While we have not expressly held that this statute applies to a Diesel locomotive, we have recently decided two cases which proceeded on the assumption that it did apply, no point being raised in this court about it.

In *Butler* v. *Darden,* 189 Va. 459, 53 S. E. (2d) 146, the plaintiff based her right to recover on the failure of the railway company to give the signals required by statute. The train there consisted of a Diesel locomotive and nine cars. The railway com-

pany contended on the trial that section 56-414 did not apply. The trial court held it did and it was not contended otherwise in this court. We held it to be established by the evidence that the stautory signals were given.

In *Atlantic Coast Line R. Co.* v. *Bowen*, 192 Va. 162, 63 S. E. (2d) 804, the train involved in the collision consisted of a Diesel locomotive and freight cars. There it was said: ''The testimony disclosed and it is uncontradicted that as the train approached the crossing, its whistle and bell were sounded in compliance with the statutory requirement. (Section 56-414, Code, 1950).'' 192 Va. at p. 165, 63 S. E. (2d) at p. 805.

Also, in *Atlantic Coast Line R. Co.* v. *Clements*, 184 Va. 656, 36 S. E. (2d) 553, the train involved consisted of a Diesel locomotive and 65 loaded freight cars. We said there that the crossing being within the corporate limits of a town, ''the railroad company was not required to give the crossing signals required by Virginia Code, 1942 (Michie) sections 3958 and 3959.'' 184 Va. at p. 665, 36 S. E. (2d) at p. 557.

Defendant contends that the question was decided in *Franklin, etc., R. Co.* v. *Shoemaker*, 156 Va. 619, 159 S. E. 100. What was decided there was that section 3958, now 56-414, did not apply to the gasoline power car involved in that collision, which the opinion described as being ''nothing more than a motor bus fitted for railway traffic,'' built on a Kelly-Springfield chassis, with a 75-horsepower motor, equipped with air and hand brakes, having within itself space for passengers, baggage, mail and express. It was there said that ''Because the statute applies to trains that pass over a given road, it does not follow that every medium of transportation there used comes within its purview. Both the motive power and the character of the tractor ought to be considered. * * The legislature must have intended that a certain standard of efficiency be observed; they must be such as to given adequate warning when the crossing is yet 600 yards distant, and while not perfectly clear we think that such a requirement should not reasonably be imposed on cars like that in judgment. Its horsepower is not greater than that of an ordinary automobile and for all practical purposes was operated as an automobile is. It does not fall within the letter of the statute and those reasons which would bring it within its spirit are not compelling.'' 156 Va. at pp. 629-30, 159 S. E. at p. 104.

While there are expressions *arguendo* in that case which lend

support to defendant's contention, the holding does not decide the question here, and the opinion was careful to say: "What has been said with reference to these statutes and to their application must be read in connection with the particular facts in this case and would not necessarily be authority when we come to consider other facts materially different from those here." 156 Va. at p. 634, 159 S. E. at p. 105.

■ The purpose for which a statute is enacted is of primary importance in its interpretation or construction. "A statute often speaks as plainly by inference, and by means of the purpose that underlies it, as in any other manner. A policy that is clearly implied is as effective as that which is expressed. * * * The statute should have a rational construction consistent with its manifest purpose, and not one which will substantially defeat its object. A case not within the letter of a statute may be held to be within its meaning, because it is within the mischief for which a remedy is provided." *Leitner* v. *Citizens Cas. Co.*, 135 N. J. L. 608, 52 A. (2d) 687, 690, 171 A. L. R. 546, 549.

■ The purpose of section 56-414 is plain. It has the same purpose as that stated in the original enactment, Acts 1893-4, ch. 737, p. 827, "to protect human life."

Section 3959 (§ 56-416, Code, 1950) was added by the revisors in 1919 because, as stated in their note, injuries and deaths at grade crossings were becoming so numerous, and the object of the new statute was to require, for the safety of travelers, "a more rigid compliance" with section 3958.

This new section 3959 provided: "If the employees in charge of *any railroad engine or train fail* to give *the signals required by law* on approaching a grade crossing of a public highway," the negligence of the traveler shall not bar recovery, but shall reduce damages. (Italics added).

In *Norfolk, etc., R. Co.* v. *White*, 158 Va. 243, 163 S. E. 530, the railway company contended that the phrase "the signals required by law" referred only to those required by section 3958 and did not include a city ordinance. We held to the contrary, stating in the opinion that in construing a statute the primary quest is to find the intention of the legislature, and that it was perfectly manifest that what the legislature meant to do was "to provide for the safety of those using the highways," and that we ought not to "brush aside and by our judgment render nugatory

this most salutary purpose and intent because foresooth the statutes contain words which might be said to be inartificial and susceptible of such technical construction, which if adopted would defeat the legislative intent.'' 158 Va. at pp. 251-52, 163 S. E. at p. 533.

Looking to the wording of the statutes involved we find that ''Every railroad company, whose *line* is operated by steam, shall provide *each locomotive* engine passing upon its road,'' with bell and ''steam whistle.'' (Italics added). The evidence shows that this railroad company's line is operated by steam as well as by Diesel locomotives. In view of the purpose of the statute, we are not required to say that its language applies only to a railroad whose line is operated *exclusively* by steam and only to each *steam* locomotive engine passing upon its road. The italicized words are not in the statute. The whistle prescribed is a ''steam whistle,'' it is true; but what sort of ''steam whistle''? The statute does not say, but directs that it be sounded not more than 600 yards nor less than 300 yards away from the crossing. Nobody would contend that a steam whistle which could not be heard more than 100 yards away would comply with the statute. It seems plain that the real concern of the statute is how loud the whistle blows, not what causes it to blow. This Diesel locomotive was equipped with an air whistle. It was the whistle customarily used to give signals and the one which the engineer testified he used on this occasion to give the signals which the defendant claimed were sufficient. The plaintiff expressly disclaimed any contention that this type of whistle did not comply with the statute. Her complaint was that the railroad company did not blow it for this crossing.

For more than half a century railroads in this State have been required to blow a whistle and sound a bell to signal the approach of their trains to public grade crossings. The public has become accustomed to these signals and in a measure to depend upon their being given. Can it be imagined that it was within the scope, or purpose, or spirit of section 3958 to require these warnings only from locomotives powered by steam, and to permit a locomotive powered by oil or electricity to run over crossings without sounding whistle or bell, and without penalty for so doing if the killed or injured traveler was not himself sufficiently alert to discover the approaching train? Such a con-

struction is certainly not within the spirit of the statute, nor do we think it is even within its letter.

Section 56-414 by its terms applies to every railroad company whose line is operated by steam, and requires such a company to provide each locomotive engine passing upon its road with bell and whistle. The concern of the statute is with the locomotive, not with the power that propels it. The provision of the statute is that *each* locomotive, not each *steam* locomotive, shall sound a bell and a whistle. If it is required that the literal words of the statute override its purpose, then literal obedience to its literal words would require that each locomotive engine passing over the road must be equipped with a steam whistle, and it is not sufficient to answer that it is not convenient to have a steam whistle on a Diesel or electric locomotive.

When the Code revisors recommended and the legislature enacted section 56-416 introducing into the law the rule of comparative negligence, the language of that statute did not describe a locomotive engine powered only by steam. Its provision was that "If the employees in charge of *any railroad engine or train* fail to give the signals required by law," then the contributory negligence of the traveler would not bar recovery. (Italics added).

The language employed in this statute coupled with the stated object of the revisors in recommending it, affords reasonable basis for the theory that the revisors assumed, as trial courts have held and as this court has assumed on at least two occasions, that section 56-414 applied to "each locomotive engine" and not merely to those whose motive power was steam.

Not only is that a fair assumption, but the statutes themselves put the matter beyond question. Section 3959 of the 1919 Code (now 56-416) was part of chapter 155, Title 36 of that Code. Chapter 152 of Title 36 (section 3881) provided that "whenever used in any chapter under this Title," the words "railroad" and "railroad company" shall include all railroads and railroad companies, "whether operated by steam, electricity, or other motive power, except when otherwise specifically designated."

Hence, when section 3959 (56-416) removed the bar of contributory negligence when the crossing signals were not given by "any railroad engine or train," it referred to every railroad engine, "whether operated by steam, electricity, or other motive

power," as expressly provided by section 3881.* Section 3881 of the 1919 Code is now section 56-1 of the 1950 Code, Title 56, under which Title is section 56-416.

Section 56-414 was amended by chapter 476, Acts 1950, page 944, and now provides that "Every railroad company shall provide each locomotive engine passing upon its road with a bell of ordinary size, and whistle *or horn*," to be sounded as previously required. The title of the act recites that it amends and re-enacts sec. 56-414 "so as to extend the application thereof," and defendant argues that this shows a purpose to extend the statute to cases to which it had not previously applied. The amendment does, of course, make sure that the statute applies to locomotive engines regardless of motive power, but in our view the act is only affirmative and declaratory of a coverage already existing.

A similar argument was made and rejected in the case of *Johnson* v. *Southern Pac. Co.*, 196 U. S. 1, 25 S. Ct. 158, 49 L. ed. 363. The Federal Safety Appliance Act of 1893 required "any .car" used in interstate traffic to be equipped with automatic couplers, with a penalty for non-compliance. The court construed the act to apply also to a locomotive, when tested "by context, subject matter, and object." Referring to the holding of the court of appeals that a strict construction of the statute excluded locomotives, and that a strict construction was required because the common-law rule as to the assumption of risk was changed by the act and because the act was penal, the court said that the act was remedial as well as penal; that strict construction in derogation of the common law extended only to recognition of a presumption against an intention to change an existing law; that conceding that such a statute should be construed strictly, it should also be construed sensibly, "and with a view to the object aimed at by the legislature;" and that strict

---

* The original crossing signal statute, Acts 1893-94, ch. 737, p. 827, was repealed by Acts of 1904, ch. 253, p. 368, but was rewritten and re-enacted as clause 24 of chapter IV of "An Act concerning public service corporations," approved January 18, 1904, Acts 1902-3-4, ch. 609, p. 968, 986. Clause 4 of chapter I of the January 18, 1904 Act, Acts 1902-3-4, p. 968, provided (as did section 3881 of the 1919 Code) that as used in that Act, the words "railroad company" included any company operating a railroad "whether operated by steam, electricity or other motive power, except when otherwise specifically designated." Clause 24 of the January 18, 1904 Act was carried into the Code of 1919 as section 3958 (now section 56-414) without any change except the omission of the concluding sentence of that clause not pertinent here.

construction should not be allowed to defeat the obvious intention of the legislature.

The 1893 statute was amended in 1903, expressly making it apply to locomotives, but the court said: "As we have no doubt of the meaning of the prior law, the subsequent legislation cannot be regarded as intended to operate to destroy it. Indeed, the latter act is affirmative and declaratory; and, in effect, only construed and applied the former act. * * * This legislative recognition of the scope of the prior law fortifies, and does not weaken, the conclusion at which we have arrived."

On more than one occasion this court has held that the letter of a statute should not be allowed to destroy its spirit and thwart its purpose. Thus, in *Tabb v. Commonwealth*, 98 Va. 47, 56-7, 34 S. E. 946, 949, 51 L. R. A. 283, it was said: "A provision of a section of a statute ought not to receive a mere literal interpretation, when it would contravene the intention of the Legislature apparent from the other sections and provisions thereof, but the words are to be expanded or qualified to effectuate the intention. Sutherland on Stat. Con., secs. 218, 246, 324; Endlich on Int. of Stat., sec. 115; *Reiche v. Smythe*, 13 Wall. (80 U. S.) 162, 20 L. ed. 566; and *Orange, etc., R. Co. v. City Council of Alexandria*, 17 Gratt. (58 Va.) 176."

In *Harris v. Commonwealth*, 142 Va. 620, 623, 128 S. E. 578, it was repeated that "The court may not, in order to give effect to particular words, virtually destroy the meaning of the entire context; that is, give the particular words a significance which would be clearly repugnant to the statute, looked at as a whole, and destructive of its obvious intent." (Quoting from 25 R. C. L., 1007-8).

In *Atlantic Life Ins. Co. v. Ring*, 167 Va. 121, 187 S. E. 449, section 4219 of the Code of 1919 (§ 38-227 of the 1950 Code) was construed to mean that a debt due the insurance company from the insured could not be set off against disability payments due the insured, although the statute in terms exempted such payments only from attachment, execution, levy or distress. This was on the principle that "force and effect are sought to be given to the obvious legislative intent, and the whole spirit of these acts is such that it was intended to protect the exempt property from all manner of coercive process of the law." 167 Va. at p. 127, 187 S. E. at p. 452.

See also, *United States v. Freeman*, 3 How. (44 U. S.) 556,

564, 11 L. ed. 724, 728, holding that a statute relating to the pay of the officers of the army was also intended to apply to officers of the marine corps. The court said that "A thing which is within the intention of the makers of the statute, is as much within the statute, as if it were within the letter."

In *Chesapeake, etc., R. Co.* v. *Bullington,* 135 Va. 307, 316, 116 S. E. 237, 240, it was said that "when we read sections 3958 and 3959 together in the light of the revisors' note, it seems clear that the intention of these sections was to cover in express terms every case coming within their influence and to limit the consequences of failure to give the signals to crossing accidents."

We hold that the court below correctly applied sections 56-414 (3958) and 56-416 (3959) to the train involved in this collision.

The defendant argues also that even if the statutes were applicable, still there was no causal connection between the failure to give the signals and the accident, but that the accident was due solely to the negligence of Lassiter. The evidence does not support this contention.

The train was running about 45 miles an hour and was ten minutes late. As Lassiter approached the crossing his view to his left, from which direction the train was coming, was obstructed by a hill or mound of earth, irregularly shaped, and extending to within 20 feet of the nearest rail. The crossing was elevated about 2½ feet above the level of the adjacent road, so the defendant's vehicle went upgrade to the crossing. The engineer was at his place on the right of the engine, the side from which Lassiter was approaching, and was the only member of the train crew who saw Lassiter. He testified that he was keeping a lookout and as he got up near the crossing he saw this truck "bounce out from behind the fill, embankment, maybe twenty-four or twenty-five feet from the road," and "I saw he was running a little bit too fast to stop," so he shut off his engine, threw on the emergency brakes and "hit him about the time I got the brakes on."

It is evident that Lassiter did not know the train was coming and did not see it until too late. There were skid marks made by the front wheels of the truck beginning close to the near rail and extending over it to about the middle of the track, from which point there was a sidewise skid in the direction the train was going. This indicates that the engine was practically upon

Lassiter before he saw it. The court held that he was negligent in not seeing it sooner; but that is far from saying that the failure to give the signals had nothing to do with the collision. If they had been given it is reasonable to suppose, and certainly the jury had a right to say, that Lassiter would have been warned of the approaching train and would have stopped to let it pass. He had just started out with his loaded truck and was still traveling at a moderate speed.

It was a reasonable inference for the jury to conclude that if the required signals had been given "the driver would have been sooner and more timely warned of * * * the approaching train and thus able to avoid the mishap." *Atlantic Coast Line R. Co.* v. *Bowen, supra,* 192 Va. at pp. 167-68, 63 S. E. (2d) at p. 807 (referring there to the absence of crossing sign and signal light). See also, *Danville, etc., Ry. Co.* v. *Chattin,* 192 Va. 216, 64 S. E. (2d) 748; *Southern Ry. Co.* v. *Whetzel,* 159 Va. 796, 167 S. E. 427; *Virginian Ry. Co.* v. *Haley,* 156 Va. 350, 157 S. E. 776; *Southern Ry. Co.* v. *Johnson,* 151 Va. 345, 143 S. E. 887, 146 S. E. 363.

The judgment below is

*Affirmed.*