# Richmond

## CHESAPEAKE AND OHIO RAILWAY COMPANY v. JAMES L. KINZER.

June 14, 1965.

Record No. 5941.

Present, All the Justices.

*Aubrey R. Bowles, III* (*Aubrey R. Bowles, Jr.; Meade T. Spicer, Jr.; Bowles, Boyd & Herod*, on brief), for the plaintiff in error.

*Frank C. Maloney, III* (*Allen, Allen, Allen & Allen*, on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

James L. Kinzer, plaintiff, brought this action against Chesapeake and Ohio Railway Company, defendant, for damages for injuries suffered by him when the truck he was driving was struck by defendant's train at a crossing in the city of Staunton. On trial to a jury he recovered a verdict for $47,500, on which the court entered judgment, and we granted defendant a writ of error.

Under its assignments of error defendant contends (1) that the evidence was not sufficient to prove it guilty of negligence; (2) that the plaintiff was guilty of contributory negligence as a matter of law; and (3) that the court erred in submitting to the jury an issue of comparative negligence and committed "other material errors."

The accident occurred August 4, 1960, at about 11:20 a.m., where a street called Summerson Row crosses defendant's tracks. The tracks run generally east and west and the street north and south. The crossing is approximately a block north of State Highway No. 250. The plaintiff, Kinzer, was driving a large truck loaded with logs going north toward the crossing and was struck on the crossing by the train coming from his right, or east. The truck was described as an extra heavy duty "ten-wheeler," twenty-eight feet long, having fifteen forward gears, with two transmissions, and weighing with its load about 45,000 pounds. The driver's seat was about eight feet from the front bumper of the truck.

The street over the crossing was 16 feet, 8 inches wide and was crossed by two tracks of the defendant, the main line on the north and a sidetrack on the south. The distance between the north rail of the sidetrack and the south rail of the main line track was 13 feet, 6 inches. The train, which came into the crossing on the main line, was a local freight composed of a Diesel engine and fourteen cars, together some six hundred feet long. The evidence for the plaintiff was that its speed was thirty to thirty-five miles an hour. Defendant's evidence was that its speed was eighteen to twenty miles an hour.

There were no signals at the crossing to warn of an approaching train. There was a crossarm sign northwest of the crossing to give notice of the presence of the crossing. The crossing was heavily traveled by trucks and cars, and the plaintiff had driven over it two or three times previously.

The street was downgrade from Highway 250 to the crossing and the view to the right, as the vehicle approached the tracks from the south, was obstructed. A mesh wire fence extended along the right-hand, or east, side of the street to within about ten feet of the sidetrack and then extended east about sixty-two feet along the sidetrack to enclose a lumber storage shed which faced the tracks and connected with Lowe's Staunton Warehouse, a structure with three gabled ends, which reached to within a few feet of the side-track and was solidly planked on the west side facing the street. The sidetrack was for the purpose of placing cars to serve this warehouse.

In the cab of the truck and sitting to the right of the driver on the side from which the train came was William T. Bowling, the owner of the truck, who was familiar with the crossing. The plaintiff and Bowling testified in substance that they pulled down to the sidetrack and stopped at five to seven feet from the near rail; that a boxcar was sitting on the siding and it and the structures mentioned obstructed their view to the east; that the windows of the truck were down and they listened and heard nothing, so with the motor in next to the lowest gear they eased over to the main line and stopped again, where the front of the truck was within six to eight feet of the south rail of the main line, which would put them as they sat in the cab fourteen to sixteen feet back from the rail; that the boxcar still obstructed their view so they could see only four hundred to five hundred feet down the track to their right; that they eased on up very slowly, continuing to look

and listen, without hearing any sound of an approaching train, and when they first saw the train the front end of the truck was on the track; that there was not then time to stop, get the truck in reverse and back off, so Bowling yelled to the plaintiff, "Pour it on her," meaning to speed up and try to get across. They did so but failed to get out of the way and the train struck about the middle of the truck. The truck was carried down the track about one hundred feet and thrown over an embankment to the north of the track.

Pictures were introduced showing the crossing and its surroundings and the engine and truck after the accident.

Bowling testified that no bell rang and no whistle blew on the train before the collision. Plaintiff testified that a bell started ringing just before the train struck the truck, and, he said, "about that time, bam, the train hit."

The court correctly instructed the jury that it was the duty of defendant "To ring the locomotive bell continuously from such distance east of the crossing as would give the plaintiff reasonable notice of the approach of the train." Paragraph 4, Instruction No. 1, *post. Cf. Norfolk, Etc., Belt Line R. Co. v. Freeman*, 192 Va. 400, 407-8, 64 S.E.2d 732, 736; *Norfolk So. Ry. Co. v. Lassiter*, 193 Va. 360, 364, 68 S.E.2d 641, 643-4.

At the time of the accident two men were painting on the front of a building, shown in the pictures, situated seventy-five to one hundred feet east of the crossing and about thirty feet north of the main line track. They testified that they watched the train go by; that they looked and listened and no whistle was blown and no bell was rung, and that they were surprised that the bell did not ring.

The defendant admits that the whistle was not blown (because of an ordinance of the city of Staunton), but insists that the bell was rung in accordance with said ordinance. Defendant's engineer and fireman both testified that the bell was turned on at a point five hundred to seven hundred feet east of the crossing and that it continued to ring as the train proceeded into and through the crossing. The bell was operated by air and the fireman, who was operating the engine, was "pretty sure" that he cut it off after the engine stopped.

Plaintiff's evidence that the bell was not ringing was not mere negative evidence, as defendant contends. It qualified as positive evidence and was sufficient to make an issue of fact to be decided by the jury. *Virginian Ry. Co. v. Haley*, 156 Va. 350, 157 S.E.

776; *C. & O. Ry. Co.* v. *Hanes, Adm'r*, 196 Va. 806, 86 S.E.2d 122; *Kindt* v. *Reading Co.*, 352 Pa. 419, 43 A.2d 145, 162 A.L.R. 1 and Anno. at p. 9.

■ We are of opinion also that the question of whether the plaintiff was guilty of contributory negligence was for the jury to determine. Defendant's argument to the contrary is that there was a point between plaintiff's second stop and the point at which he saw the train, at which the train was visible to the plaintiff had he looked. But the plaintiff and Bowling testified that when the truck reached a point at which they could see the train, the front of the truck was on the track or on the near rail of the track. Plaintiff testified that after the second stop he looked and listened and saw and heard no train, he "revved" his engine up and let the clutch out; that he had to look ahead because there was a culvert there, and he didn't want "to run off in that hole;" that "there are holes there, a big culvert. And I got started off, and I glanced back up the track, and that is when I saw the train. * * [M]y front end was done up about on the rail. * * And thoughts pass through your mind quick when an accident is about to happen. I thought about stopping and backing up, but I knew I didn't have time. Mr. Bowling hollered. And I just throwed it to the floor and tried to get out of the way."

It was for the jury to say whether plaintiff exercised reasonable care in looking, in listening and in proceeding as he thus described.

■ A more serious question arises on the court's instructing the jury to the effect that if the defendant failed to blow the whistle on the engine then contributory negligence on the part of the plaintiff would not bar recovery but was to be considered in mitigation of damages. That was done by Instruction No. 1, reproduced in the margin.[1]

---

[1] The Court instructs the jury that at the time and place of the accident it was the duty of the defendant, acting through the train crew, to exercise ordinary care for the safety of the plaintiff, more particularly as follows:

1. To keep a reasonable lookout for vehicles approaching the grade crossing.

2. To run the train at a speed not greater than was reasonable under the circumstances.

3. To sound the locomotive whistle, if, in your opinion, the circumstances of this case were such that a warning was reasonably appropriate and necessary to warn or to prevent the accident.

4. To ring the locomotive bell continuously from such distance east of the crossing as would give the plaintiff reasonable notice of the approach of the train.

If you believe by a preponderance of the evidence in this case that the defendant

It will be observed that one of the defendant's duties as stated in paragraph three of the instruction was to sound the locomotive whistle if, in the opinion of the jury, "the circumstances of this case were such that a warning was reasonably appropriate and necessary to warn or to prevent the accident;" and, added the instruction, if the defendant "failed to blow the whistle when reasonably necessary or failed to give timely warning by the ringing of the bell, or both," then the jury must find for the plaintiff, and consider his contributory negligence, if any, in mitigation of damages.

This instruction was based on §§ 13-43 and 13-44 of the ordinances of the city of Staunton, set out in the margin.[2] They were enacted pursuant to the authority of § 56-414 of the Code of Virginia, which provides that every railroad company shall equip its engines with a bell and a whistle or horn, and directs when and how they shall be sounded with respect to grade crossings outside of incorporated cities and towns; "and shall give such signals in cities and towns as the legislative authorities thereof may require."

Section 56-416 of the Code of Virginia provides that if the employees in charge of any railroad engine or train fail to give the signals "required by law" on approaching a grade crossing of a public highway, then the failure of a traveler to exercise due care in approaching the crossing shall not bar recovery of damages for his injury or death or to his property resulting from a collision on

violated any one or more of the foregoing duties then it was guilty of negligence. If you further believe that such negligence, if any, was the sole proximate cause of the accident then you will find your verdict for the plaintiff and assess his damages in accordance with the instruction on damages.

If you believe that the engineer and fireman kept a reasonable lookout and ran the train at a reasonable speed, but that they either failed to blow the whistle when reasonably necessary or failed to give timely warning by the ringing of the bell, or both, then you will find your verdice for the plaintiff, even though you may believe the plaintiff was also guilty of negligence efficiently contributing to cause the accident, his negligence on his part, if any, to be considered by you in mitigation, or diminishment, of the damages sustained by him.

[2] Sec. 13-43. Railroads—Whistles. It shall be unlawful for any person to cause to be blown or sounded any locomotive whistle within the corporate limits of the city, except to give appropriate and necessary signals or to warn or prevent accidents.

Sec. 13-44. Same—Bell. It shall be unlawful for every locomotive engine put or placed upon any railroad or sidetrack in this city not to have attached thereto a bell. Such bell shall be rung whenever the engine is to cross a street and shall continue ringing until such engine shall have passed such crossing. If any such engine shall pass across any street in the city without first ringing and continuing to ring such bell in the manner aforesaid, the owners of the engine, as well as the person then having control, conduct and management thereof, shall each be guilty of a violation of this section.

the crossing, but the negligence of the traveler "may be considered in mitigation of damages."

The defendant states in its brief: "It was not denied by the defendant that the ringing of the bell was a *signal required by law*, the failure to give which would bring the case within the provisions of Sec. 56-416, Va. Code, 1950." *Norfolk & W. Ry. Co.* v. *White*, 158 Va. 243, 163 S.E. 530.

Defendant further states in its brief that the blowing of the whistle is not in dispute and that it "conceded throughout the trial below that no whistle was blown." Its contention is that blowing the whistle was not a signal *required by law*, but a signal forbidden by the Staunton ordinance "except to give appropriate and necessary signals," or "to warn or prevent accidents." Hence, the defendant argues, since the blowing of the whistle was not required by the ordinance, but only permitted by the ordinance in the stated circumstances, the comparative negligence rule is not applicable and the court erred in instructing the jury to the contrary. We agree with that contention.

Section 56-416 removes the common law bar of contributory negligence only in cases where the signals *required by law* are not given. Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms. 17 Mich. Jur., § 70, pp. 331-2; *Sydnor Pump and Well Co.* v. *Taylor*, 201 Va. 311, 316, 110 S.E.2d 525, 529.

The Staunton ordinance did not require that the whistle be blown. To the contrary, it was expressly made unlawful to blow it except to give "appropriate and necessary signals," *i.e.*, signals appropriate and necessary in the operation of its trains; or "to warn or prevent accidents." When to blow, where to blow, how to blow, the ordinance does not prescribe. Necessarily it leaves those matters within the field of the common law duty to exercise reasonable care. The blowing of the whistle is not a duty required by the ordinance, but a duty only when so determined by the facts as found by the trier of the facts. Section 56-416 of the Code removes contributory negligence as a complete bar to recovery and constitutes it a matter to be considered in mitigation of damages only when there is failure to give the signals required by law, as for example the signals specifically required by § 56-414 to be given outside of incorporated cities and towns. It was error, therefore, to instruct the jury as in

Instruction No. 1 that failure to blow entitled the plaintiff to recover on the basis of comparative negligence.

Appellant states in its brief that the court also erred in admitting into evidence certain pictures offered by the plaintiff and in refusing certain instructions requested by the defendant.

The pictures were plaintiff's Exhibits 7, 8 and 9, purporting to show the position of the boxcar with reference to the crossing and indicating that it was closer to the crossing than the evidence for the defendant showed it to be. There was evidence from plaintiff's witnesses that these pictures showed the scene at the time of the accident as they remembered it, including the position of the boxcar. They were properly admitted, 14 Mich. Jur., Photographs and Photographers, § 5, p. 412.

The instructions which the defendant says were erroneously refused were Instructions E, H, I, K, L, M and O, which would, says defendant, have presented its theory that if the plaintiff saw or reasonably should have seen the train approaching and thereafter moved onto the track from a place of safety, he could not recover when his action was the sole or a contributing cause of the collision. Plaintiff points out that the refusal of these instructions was not assigned as error as required by Rule 5:1, § 4; *Harlow* v. *Commonwealth*, 195 Va. 269, 77 S.E.2d 851. In addition, the court in other instructions properly informed the jury as to the duties of the plaintiff. The instructions to be given on a retrial will have to be fitted to the evidence then introduced and adapted to the holding herein as to the effect of the failure to blow the whistle.

For the error pointed out in Instruction No. 1, the judgment below is reversed, the verdict is set aside and the case is remanded for a new trial.

*Reversed and remanded.*

GORDON, J., concurring in result.

I concur in the decision to reverse and remand on the ground that clause 3 of Instruction No. 1 was erroneous, in that it applied the comparative negligence rule for failure to sound the whistle. My only substantial disagreement is with the holding that clause 4 of Instruction No. 1 (*ante*, footnote 1) correctly set forth the bell-ringing requirements of the Staunton ordinance, upon which the

application of the comparative negligence rule rested. In my opinion, the deviation is not proper in this case.

As pointed out in the majority opinion, §§ 56-414 and 56-416 of the Code of Virginia prescribe only mitigation of damages for comparative negligence, instead of the bar of contributory negligence, if the signals *required by law* are not given—so far as here pertinent, if the bell was not rung as required by ordinance of the city of Staunton.

The Staunton ordinance (Sec. 13-44, *ante*, footnote 2) requires that the "bell shall be rung *whenever the engine is to cross a street* and shall continue ringing until such engine shall have passed such crossing", and ordains that the owner of the engine and the person having control of the engine shall be "guilty" of violation of the ordinance "If any such engine shall *pass across any street* in the city without first ringing and continuing to ring such bell in the manner aforesaid". (Emphasis supplied) Clause 4 of Instruction No. 1, on the other hand, requires that the bell be rung "continuously from such distance east of the crossing as would give the plaintiff reasonable notice of the approach of the train", upon pain of the invoking of the comparative negligence rule against the defendant. This, I believe, is not "required" by the Staunton ordinance, and is an improperly liberal interpretation of the intent of the Staunton ordinance in this case.

As stated in the majority opinion with respect to Code § 56-416, "Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms". The common law rule that contributory negligence is a bar to recovery has been followed in this State for many years. The only deviation authorized by the Legislature, I believe, is found in Code §§ 56-414 and 56-416, applying the comparative negligence rule for failure to give the *required* railroad signals.[1]

In Instruction No. 3a, a finding instruction for the defendant, the court told the jury that the defendant was not guilty of negligence if (among other matters) "the bell on the locomotive was ringing for a reasonable distance east of the crossing". This was an instruc-

---

[1] It may be noted that, in adopting § 56-414, the Legislature took pains to describe the precise point at which the signals must begin. The Legislature did not lay down the standard of reasonable notice, leaving it to the jury to determine whether the standard had been observed, but fixed the precise places where the signals should be given and continued.

tion on the common law duties and, as such, not objectionable. But the case is quite different, I believe, in instructing the jury on comparative negligence (as was the case in Instruction No. 1) where the instruction is based on an interpretation of enactments in derogation of the common law.

It may be conceded that varying interpretations might be given to the intent of the Staunton ordinance. It requires ringing "whenever the engine is to cross a street" and declares the ordinance violated if the engine has "passed across any street" without first ringing and continuing to ring "in the manner aforesaid". It does not state expressly that the ringing shall begin immediately before the engine reaches the outer limit of the street, and it specifies no point at which the ringing shall begin. Moreover, if the intent of the ordinance is to require bell-ringing only immediately before reaching the outer limit of the street, it may be regarded as a rather ineffectual accident-preventive enactment. But these considerations do not serve as the basis for arguing that this court should conclude that the Staunton ordinance requires what it obviously does not require by its language, when we are dealing with enactments in derogation of the common law. Such arguments should be addressed to the Staunton city Council, if the language of the ordinance is to be changed.

Violation of the bell-ringing ordinance is a misdemeanor. (Section 1-5 of the Staunton Code provides a criminal penalty for violation of Sections 13-43 and 13-44, the whistle-blowing and bell-ringing ordinances.) It is obvious, I believe, that a person should not be convicted of the crime of failing to ring a bell "whenever the engine [under his control] is to cross a street", upon evidence supporting only the finding that he failed to ring the bell "continuously from such distance east of the crossing as would give . . . [another person] reasonable notice of the approach of the train". Nevertheless, by approving clause 4 of Instruction No. 1, this court is saying that this reasonable notice is a requirement of the ordinance. It should follow, then, that a jury would be permitted to convict an accused by applying a standard that is not mentioned in, nor reasonably implied by the language of, the ordinance.

Furthermore, I am not persuaded that the court properly searched the mind of the city Council before giving clause 4 of Instruction No. 1, even if such mind-searching were permitted. The language of the whistle-blowing and bell-ringing ordinances (Sections 13-43 and 13-44, *ante*, footnote 2) evidences the concern of the city

Council about disturbing noises within the city limits, and the ordinances may properly be interpreted to require the least whistle-blowing and bell-ringing practicable. The expressed purpose of the whistle-blowing ordinance is to *prevent* the blowing, with an exception: "to give appropriate and necessary signals or to warn or prevent accidents". The bell-ringing ordinance does not contain the language just quoted, and the city Council in its wisdom may have concluded that bell-ringing only while in the crossing was most consistent with its objectives.